285 So.2d 495

**John Alvin LEE**

v.

**STATE.**

**6 Div. 468.**

Court of Criminal Appeals of Alabama.

Aug. 14, 1973.

Rehearing Denied Sept. 25, 1973.

William J. Baxley, Atty. Gen., Montgomery, and James L. Hunt, Sp. Asst. Atty. Gen., Tuscumbia, for appellee.

PER CURIAM.

An indictment was returned against appellant wherein he was charged with first degree murder. He was accused of murdering Jesse F. Turner by shooting him with a pistol. A jury convicted him of second degree murder and fixed his punishment at ten years imprisonment in the penitentiary. This appeal emanates from the judgment duly entered pursuant to the verdict.

N. P. Callahan, Jr., Birmingham, for appellant.

The evidence shows that on March 7, 1971 appellant, accompanied by his wife and young daughter in an automobile, accosted Gregory Brooks, turning nine years of age on September 25, 1971 (the date of trial) at or near 30th Street South in Birmingham where young Brooks lived in an apartment, and inquired of him where Jesse Turner lived.

Young Brooks, who testified as a witness for the State, thereupon, at appellant's request, accompanied appellant and his wife to the door of the apartment on the first floor where Turner lived. Young Brooks informed appellant and his wife of the residence of Mr. Turner. At this point the man, Mr. Lee, "told me to run along."

The witness Gregory further testified that when he got out of the apartment building he heard two shots and "then they ran out of the building and they gave the gun to the woman and the woman put it in her bra." The witness corrected his statement by saying that the man gave the gun to the woman and she put it in her bra. The witness further testified that the man and the woman were the persons he had taken to the apartment; that the two jumped in the car and left; that there was a "little bitty boy in the back seat."

Mrs. Audrey Turner, widow of the victim, Jesse F. Turner, testified that she was in the dining room area of her apartment on the afternoon of March 7, 1971, at which time her husband was killed in the doorway of their Apartment Number 19, 1200 30th Street, South; that she heard three shots shortly after which she went to the door and found her husband slumped at the door and dead. Witness did not see the shooting.

Witness, Mrs. Albert (Louise) Walter, called by the State, testified that on March 7, 1971, she with her husband (who did not appear as a witness) had an occasion to be on 30th Street, South, where her secretary lived; that she saw a man and a woman, and a little boy, Gregory Brooks, whom she knew, go into the apartment, after which she heard two shots. Then the man and the woman came out of the apartment, went across the street and up the hill to a car. She further testified that she was on the sidewalk going into the apartment as they came out and passed by her; that she saw a gun in the hands of the woman. The witness at this time, so she stated, was fifteen feet from the apartment. Later she saw a man in a police line-up who, to the best of her judgment, was the man, but she was not positive.

Catherine Marie Lee, called by the State, testified that she was with her mother, Alice Faye Lee, and her father, the appellant, on the afternoon of March 7, 1971, when they drove around on the south side, at which time they were looking for a car "to tell the police where that it was."

The witness further said that when they were near some apartment buildings, she told her father that she recognized the car "because my mother had the tag number written down on one of her books"; that she pointed the car out to her father and mother; they stopped the car "and they went over to the man's car and my father put his hand on the hood." Why he did it she did not know. Further testifying, the witness said, "Then there was this little boy up on the hill and he hollered out and said something to them." She didn't understand what he said because she was in the car. Gregory Brooks, at this point, was ushered to the courtroom door, whereupon the witness identified him as the one who went with her mother and father out of sight to the apartment. The little boy came back around the corner, and in about two minutes she heard a shot, and then another, right after each other; that her father and mother then came back and got in the car with her. The witness didn't remember seeing her father with a gun; that he owned several.

After an argument and colloquy between the court and the attorneys, the trial court overruled defendant's motion to exclude the evidence which included that of the deputy coroner to which we now advert.

W. L. Allen, Deputy Coroner of Jefferson County for over 12 years, testified that on March 7, 1971, he viewed a body identified to him as that of Jesse F. Turner; that there was a gun shot in the abdomen, the location of which he described; and a gun shot wound in the head. The entrance

of the latter wound was in the left ear canal, about one-eighth of an inch forward, and the exit wound "seven inches of the mid-line of the head and four inches above the juncture of the right ear in the head (indicating) * * *." The witness testified that he did not probe the wound of the head, but it was a through and through wound and reasonably calculated to produce death.

The witness testified that on many occasions he had examined persons who had been shot in the head; that he had "Without fear of hesitation, sir, I would say in excess of one hundred," observed gun shot wounds of the head that resulted in death. On cross the witness testified that some of the examinations were on his own and others were the result of viewing autopsies. There was no autopsy in the case of the deceased Turner.

■ We think the trial court did not abuse its discretion in holding that the witness had qualified as an expert. The court was free of error in overruling objection to the testimony of the witness that the head wound was reasonably calculated to produce death. Copeland v. State, 27 Ala. App. 405, 173 So. 407; Daniel v. State, 31 Ala.App. 376, 17 So.2d 542; King v. State, 266 Ala. 232, 95 So.2d 816; Lucy v. State, 49 Ala.App. 116, 269 So.2d 134. This testimony together with the testimony of the widow, supra, was amply sufficient to show that the head wound contributed to or caused the death of Mr. Turner.

It is to be noted that the transcript of the evidence in the record, the essentials of which we have briefly set forth, supra, fails to show any positive evidence that appellant or his wife fired the shot or shots that resulted in the death of Mr. Turner; the evidence is circumstantial that either appellant or his wife fired the fatal shot.

We think the jury could have reasonably determined or inferred from the evidence that both the appellant and his wife were diligently searching for or pursuing Mr. Turner, the victim, and that one of them carried the pistol which one of them used in committing the homicide. A serious question is whether the appellant actually fired the fatal shot or Mrs. Lee fired the death weapon; and whether appellant aided or abetted her in the commission of the homicide. If the homicide was a felony and appellant aided or abetted his wife in the unlawful act, he became a principal, even though he did not actually fire the weapon. He then became subject to punishment as provided by law. Title 14, Section 14, Recompiled Code, 1958, reads:

"§ 14. * * * The distinction between an accessory before the fact and a principal, between principals in the first and second degree, in cases of felony, is abolished; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid or abet in its commission, though not present, must hereafter be indicted, tried, and punished as principals, as in the case of misdemeanors."

■ We think the evidence sustains a reasonable inference that appellant and his wife were aiding and abetting each other in the commission of the offense for which appellant was tried and convicted. Appellant's daughter, Catherine Lee, testified that she recognized the Turner automobile and pointed it out to her father; that she recognized the car for which they were searching, because her mother had the tag number written down in one of her books; that her mother told her "that that was the tag number and so I told my father that I had seen the car and they stopped the car and they went over to the man's car and my father put his hand on the hood." She further stated that she did not know why he did it.

Under the guidance of Gregory Brooks, Mr. and Mrs. Lee went from the Turner automobile, which they both got out and viewed, to the victim's apartment where shots were fired, two of which entered the victim's body; both parents were seen

leaving the apartment with a pistol. As we have noted, Gregory Brooks testified that appellant handed the pistol to his wife who put it in her bra. Mrs. Walter testified that Mrs. Lee had the pistol in her hand.

The testimony about Mrs. Lee's possession of the pistol is not necessarily conflicting. A time element may have been involved so that the jury could have concluded that both witnesses were speaking the truth. The evidence is undisputed (neither parent took the witness stand) that appellant or his wife or both of them had possession of the offending weapon as they left the scene of the homicide.

We think the evidence admits of ample inference that both appellant and his wife were in quest of the victim, one or the other at the time was in possession of the offending pistol; and that they were not on a social mission while in search of the deceased. The jury could have concluded that search was being conducted to commit unlawful violence on the person of the deceased, and that the pistol was being carried to effect the violence. We might further add that both parents being parties to the search, and both being present when the pistol was fired and the victim was killed, a reasonable inference could be drawn therefrom that the parents conspired to use the pistol to commit violence on the person of the deceased.

■ Appellant here complains that the court erred in charging the jury, to which he took exception, on the elements of conspiracy, when there was no evidence that the parents conspired to kill the deceased or do him bodily harm by use of the pistol or otherwise.

We cannot accord merit to appellant's exception to this portion of the oral charge. We will not undertake to set out the oral charge of the court relative to the conspiracy, but suffice it to say that the thrust of the charge and its effect was to enlighten the jury on the legal effect of

Title 14, Section 14, supra, so far as the appellants may have conspired to commit violence on the person of Mr. Turner. We have pointed out, supra, that evidence sustains a reasonable inference of a conspiracy between the two. If one aided or abetted the other in the commission of the unlawful felony, then both would be guilty as principals. But only one in the instant case was tried.

■ The obvious effect of this Section 14, Title 14, supra, is to remove the impediment whereby, at common law, the accessory before the fact was not punishable. McMahan v. State, 168 Ala. 70, 53 So. 89, 91. Accessories before the fact must be indicted, tried, and punished as principals. Scott v. State, 30 Ala. 503.

Title 14, Section 99, Recompiled Code, 1958, reads as follows:

"§ 99. * * * Any two or more persons conspiring together to commit an assault on another with intent to murder, maim, rob, ravish, or to commit the crime against nature, or who attempt to poison any human being, or to commit murder by any means not amounting to an assault, shall each themselves be guilty of a felony, and shall, on conviction, be imprisoned in the penitentiary of the state of Alabama for not less than one year, and not more than ten years."

Otherwise, conspiracy to commit a felony is a misdemeanor. Title 14, Section 100, Recompiled Code, 1958.

In Jones v. State, 174 Ala. 53, 57 So. 31, our Supreme Court quoted with approval a pronouncement in Morris v. State, 146 Ala. 66, 41 So. 274, 280, as follows:

"When by prearrangement, or on the spur of the moment, 'two or more persons enter upon a common enterprise or adventure, and a criminal offense is contemplated, then each is a conspirator, and if the purpose is carried out each is guilty of the offense committed, whether he did any overt act or not. This rests

on the principle that one who is present, encouraging, aiding, abetting, or assisting, or who is ready to aid, abet, or assist, the active perpetrator in the commission of the offense, is a guilty participant, and, in the eye of the law, is equally guilty with the one who does the act. Such community of purpose, or conspiracy, need not be proved by positive testimony. It rarely is so proved. The jury are to determine whether it exists, and the extent of it, from the conduct of the parties and all the testimony in the case.' "

The Supreme Court in the *Jones* case, supra, further observed:

"Aid and abet 'comprehend all assistance rendered by acts or words of encouragement or support or presence, actual or constructive, to render assistance should it become necessary. No particular acts are necessary. If encouragement be given to commit the felony, or if, giving due weight to all the testimony, the jury are convinced beyond a reasonable doubt that the defendant was present with a view to render aid should it become necessary, then that ingredient of the offense is made out.' Raiford's Case, 59 Ala. 106; Tally's Case, 102 Ala. 25 et seq., 15 So. 722."

An interesting case, with some factual similarity and legal pronouncements applicable to the instant case, is Commonwealth v. Ventura et al., 294 Mass. 113, 1 N.E.2d 30, wherein Ventura and three others were convicted of second degree murder. There was no evidence as to which defendant inflicted the death blows. The appellate court observed:

"The evidence warranted a finding of concerted action on the part of all the defendants in going to the remote place when the murder was committed on the afternoon of October 3, 1934, and that they all were in a position to render assistance in the commission of the crime. There was evidence of separation after the murder and a gathering in Boston late in the evening. The contradictory statements made by the several defendants and the possession by one of them of an implement like one by which it might have been found by the jury that a mortal blow was inflicted upon the murdered man were highly significant. A verdict of guilty of murder in the second degree was warranted on the evidence. These was no error in denying the motions for directed verdicts in favor of the defendants. * * *"

In the instant case both parents were in position to render aid and encouragement to the other in the commission of the homicide for which appellant was convicted. Both went to the scene together and one or the other had the death weapon. Communication with each other as to their purpose in wanting to search for and find the victim was not incompatible, but on the other hand very probable, in view of their marital relationship. A strong inference may be drawn from the facts in this case that appellant and his wife had a common purpose in locating the deceased, and that they aided and abetted each other in committing the homicide. We think the trial court was free of error in overruling appellant's motion to exclude the evidence and in submitting the case to the jury. There was no motion for a new trial.

The judgment is hereby

Affirmed.

All the Judges concur.