295 So.2d 262

**Wilman WALTON**

v.

**STATE.**

**6 Div. 552.**

Court of Criminal Appeals of Alabama.

May 7, 1974.

**542**

Richard L. Taylor, Birmingham, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and Samuel L. Adams, Sp. Asst. Atty. Gen., Dothan, for the State.

SIMMONS, Supernumerary Circuit Judge.

Appellant-defendant was indicted and convicted by a jury for murder in the first degree. Punishment was fixed at life imprisonment, judgment entered therefor and this appeal therefrom.

The victim of the homicide was Raphael Hill, a black male. The place was Westside Lounge, Ensley, Alabama, in Jefferson County. The lounge was a resort primarily for blacks, and owned and operated by a black, Fred Jones, who was present when the homicide occurred. Alcoholic beverages and food were served to customers to the tune of a music machine as desired. The time was around 1:30 A.M. on Sunday, February 14, 1972.

The appellant entered a plea of not guilty to the indictment. The state introduced evidence, largely if not wholly circumstantial, to establish allegations of the indictment. The appellant did not take the witness stand, nor did he put up any witnesses or evidence. When the state rested, he moved to exclude the evidence. The court overruled the motion and submitted the issues under the plea to the jury. There was no motion for a new trial.

It appears from the evidence of the state that there were several customers in the lounge at the time of the homicide. Raphael Hill, the deceased victim, was sitting at the bar of the lounge. Four other customers were sitting at a table preparing to eat some food that was served to them. Other customers were at another table. The lights were dimmed to the extent that visibility was impaired. Two shotgun blasts with slight spacing between rang out. The deceased was the victim of one of the blasts, and Henry C. Wayne, also a customer, was the victim of another of the blasts. Wayne had to have his arm amputated as a result of his wound.

Immediately after the shotgun blasts, two persons ran to the exit door, and while so proceeding to the door, two pistol shots were fired at them by Fred Jones, the owner of the business. These shots did not stop their hurried exit. Jones could not identify the retreating persons, nor the ones who triggered the shotgun blasts. The dim lighting impaired identification.

It is not necessary to delineate all the evidence, but only so much as points to the guilt of the appellant as the one who fired one or more of the blasts, or, if not, who

was an accessory to the shooting and thereby became the principal and subject to the indictment that charged him with the offense. We will make further advertence to this principle later in this opinion.

According to the evidence, there were five male blacks who arrived late in the evening and took seats at one of the tables. One of these persons was the state's witness William Johnson. These five persons were accompanied in another automobile by Wilman Walton (appellant-defendant) and Aaron Jones. The witness, Johnson, made an in-court identification of Wilman Walton. The latter two, Walton and Jones, were seated at another table the night of the homicide. Four other patrons were seated nearby in the same room. This witness used a plat (not in the record but in evidence) to identify the seating arrangement of the four with him. The appellant and Aaron Jones were seated at another table.

It appears from the evidence of this witness (and another witness) that an argument ensued between Aaron Jones and "another guy at the other table." Aaron remained seated but the "other guy". stood up. The argument was inaudible to the witness due to the music that was being played. This "guy", in about four or five minutes, "stood up with a knife in his hand —looked like a steak knife." Aaron Jones did not have a weapon. The witness saw no other weapon at that time. Jones stood up twice.

In about ten or fifteen minutes, Aaron Jones and appellant both started out the door. As they were about to leave, a man at a table playing with a knife in his hand said, "Hey, Nigger, want to go?" Witness stated Walton and Jones walked on out the door but came back in five or ten minutes.

When they came back both of them had what "looked like a barrel under their coat." It was then that the man at the end of the table came around. He had what appeared to be a steak knife in his hand.

He got about halfway to the table and stopped. The shooting started but the witness was not looking at Jones and Walton. When this happened, he saw the bartender, Fred Jones, shoot. Witness did not know what became of the man at the table. The witness was trying to get out as quickly as he could.

On re-direct examination the witness testified that Aaron Jones and Walton, when they came back in the door, each had what appeared to be a gun barrel under their respective coats. On cross-examination, the witness said he did not see the "whole gun" but in his judgment, it was a gun.

A police officer testified that he got two shotguns from the home of Aaron Jones. These guns were marked as exhibits three and four for identification, but so far as we were able to find, were not introduced in evidence.

A deputy coroner, after being qualified as an expert, testified that the deceased Raphael Hill had about sixty shotgun pellet wounds on the right side of his midline, and about ten on his left; that these wounds caused Hill's death.

Police Officer J. E. Webb testified that he left the scene of the homicide about 3:30 A.M. and went to Lloyd Nolan Hospital where Henry C. Wayne was in the emergency room. The witness proceeded from there in the direction of his home. However, he answered a call and went to University Hospital where he saw two police officers. These officers were investigating the shooting of appellant Wilman Walton. After talking with the officers, the appellant, as he had previously told the two officers, told the witness as follows:

"A. He told me that he was walking, going home, near Sixteenth Street and Twelfth Avenue, North, when he passed a group of black males on the corner in that area and heard what sounded like a firecracker or a shot and felt a pain in his leg and discovered he was shot."

The witness further testified that he saw the injury to the appellant's leg and in describing it said:

"A. There was what appeared to me to be a gunshot wound to the thigh."

He further testified that he did not recover the bullet from any official or from the appellant at that time. The witness then went home.

Witness Henry C. Wayne, the person whose arm was wounded and had to be amputated, testified that he and his companions ordered some food between 12:00 and 1:00 o'clock; that after placing the order, he went home after some money, came back in about fifteen or twenty minutes, and was preparing to eat when the shotguns were fired; that he was wounded but could not identify the persons who fired the guns. The shots came from the front door.

Robert Patterson, Jr., who was with the Wayne group of patrons, testified that while Wayne was gone, "before those two fellows walked out of the lounge", one of the guys at another table said, "he was going to kill that nigger (sic) with the hat on"; that Wayne had a hat on and so did Oscar Rivers and Ted Rivers. Witness further testified that the two men walked out and when they came back in, they had reached "the middle of about of the first table and that is when the first shot was fired." It was a shotgun. Just before the shots were fired, "the light, the little brown-skinned one, he said he didn't kill anyone in Vietnam, it was a good time to kill them now."

While it does not positively appear from the evidence who fired the two shots, it does appear that two shotgun blasts were fired; that Wayne was shot in the arm by one of the blasts, and Hill, who was sitting at the bar, fell mortally wounded by one of the blasts. There was no evidence that anyone besides Jones and the appellant had guns.

We think the jury was amply justified in inferring from the evidence that appellant was a guilty participant.

We quote Title 14, Section 99, Recompiled Code 1958, as follows:

"Conspiracy to commit certain felonies. —Any two or more persons conspiring together to commit an assault on another with intent to murder, maim, rob, ravish, or to commit the crime against nature, or who attempt to poison any human being, or to commit murder by any means not amounting to an assault, shall each themselves be guilty of a felony, and shall, on conviction, be imprisoned in the penitentiary of the state of Alabama for not less than one year, and not more than ten years."

In Jones v. State, 174 Ala. 53, 57 So. 31, our Supreme Court quoted with approval a pronouncement in Morris v. State, 146 Ala. 46, 41 So. 274, as follows:

"When by prearrangement, or on the spur of the moment, 'two or more persons enter upon a common enterprise or adventure, and a criminal offense is contemplated, then each is a conspirator, and if the purpose is carried out each is guilty of the offense committed, whether he did any overt act or not. This rests on the principle that one who is present, encouraging, aiding, abetting, or assisting, or who is ready to aid, abet, or assist, the active perpetrator in the commission of the offense, is a guilty participant, and, in the eye of the law, is equally guilty with the one who does the act. Such community of purpose, or conspiracy, need not be proved by positive testimony. It rarely is so proved. The jury are to determine whether it exists, and the extent of it, from the conduct of the parties and all the testimony in the case.'"

The Supreme Court in the *Jones* case, supra, further observed:

"Aid and abet 'comprehend all assistance rendered by acts or words of encourage-

ment or support or presence, actual or constructive, to render assistance should it become necessary. No particular acts are necessary. If encouragement be given to commit the felony, or if, giving due weight to all the testimony, the jury are convinced beyond a reasonable doubt that the defendant was present with a view to render aid should it become necessary, then that ingredient of the offense is made out.' Raiford's Case, 59 Ala. 106; Tally's Case, 102 Ala. 65 et seq., 15 So. 722."

We cited *Jones* and *Morris,* supra, in John Alvin Lee v. State, 51 Ala.App. 332, 285 So.2d 495, cert. den., 291 Ala. 787, 285 So.2d 500. In *Lee,* there was no positive evidence which showed who fired the fatal shot, the husband or the wife. We held that one was a principal and the other an accessorial principal in the homicide. It made no difference as to which one fired the shot because either was guilty under Title 14, Section 99, supra.

■ It makes no difference in law which one in the instant case fired the shotgun blasts, because both were principals for that one fired the fatal blasts and the other, under the evidence, was aiding or abetting in the homicide, as the jury could and probably did infer from the evidence. This inference could be drawn from the fact that appellant and Aaron Jones went outside the lounge at the same time and came back into the building together, each with a shotgun from which the two blasts were fired. There were other evidential circumstances supporting the jury's verdict that fastened guilt on appellant as charged in the indictment.

We have not delineated all the evidence in detail, but we have set out enough to sustain the view that appellant and Jones were on a rampage of violence inside the lounge, each armed with a shotgun; that when the sounds from the shotgun blasts subsided, one patron lay severely wounded and the other dead from a shotgun wound. Appellant and Jones hurriedly left together. So far as the record reveals, both victims were innocent and free of any disturbance.

■ Written charge three was submitted by the appellant and refused. Even if there was sufficient evidence, which we doubt, to support a plea of self-defense, it was insufficient and properly refused for the reason that it omits the elements of the plea. Sanders v. State, 242 Ala. 535, 7 So.2d 483(7).

■ We will not review any portion of the trial court's oral instructions to the jury. There were no exceptions thereto. In the absence of exceptions, the charge is not reviewable. Passmore v. State, 47 Ala.App. 189, 252 So.2d 115(3).

We hold that the trial court correctly overruled the appellant's motion to exclude the evidence. This motion was made when the state rested.

The case was properly submitted to the jury for their judgment on the evidence. We are unwilling to disturb the jury's verdict or judgment of the court entered pursuant to the verdict. We find no prejudicial error in the record and therefore affirm the judgment.

The foregoing opinion was prepared by the Hon. Bowen W. Simmons, Supernumerary Circuit Judge, serving as a judge of this court under Section 2 of Act No. 288, July 7, 1945, as amended; his opinion is hereby adopted as that of the court.

Affirmed.

CATES, P. J., and TYSON, HARRIS and DeCARLO, JJ., concur.