307 So.2d 713

Wilman **WALTON**

v.

**STATE.**

**6 Div. 720.**

Court of Criminal Appeals of Alabama.

Feb. 4, 1975.

Robert B. Rubin, Birmingham, for appellant.

William J. Baxley, Atty. Gen., Montgomery, David L. Weathers, Asst. Atty. Gen., Birmingham, for the State.

BOWEN W. SIMMONS, Supernumerary Circuit Judge.

Appellant-defendant, an indigent, was indicted and convicted by a jury for assault with intent to murder one Henry Charles Wayne. The trial judge imposed a sentence of twelve years imprisonment in the penitentiary. This appeal, in forma pauperis, followed in the manner provided by law. We wish to note that the appellant was previously tried and convicted in the Circuit Court of Jefferson County for murder in the first degree and sentenced to

life imprisonment. This appeal is reported in 52 Ala.App. 541, 295 So.2d 262.

The homicide occurred at the same place and time, and was part of the res gestae here involved. Some of the evidence adduced at the trial of the homicide does not appear in the record of the instant appeal. In many areas, the evidence is the same. This court affirmed the judgment in the homicide case. The instant appeal was tried on a plea of not guilty.

The shooting incident took place around 1:30 A.M. on February 14, 1972, at the West Side Lounge, Ensley, Alabama, in Jefferson County. The state introduced evidence largely if not wholly circumstantial to establish the averments in the indictment. Appellant did not take the stand, nor did he put up any witnesses nor any evidence. When the state rested, the defendant did likewise. Neither the state nor the defendant requested written charges of any kind. The defendant did not make a motion to exclude the state's evidence, nor did he file a motion for a new trial.

It appears from the evidence that there were several customers in the Lounge when the complaining victim in this case, Henry Charles Wayne, was severely wounded by a shotgun blast. The injury resulted in medical amputation of his arm, the subject of the very severe wound.

There was no evidence that Wayne was involved in any violence or misconduct. He was sitting at a table in the dimly lighted Lounge where two shotgun blasts were fired, and Wayne received his severe wound from one of the blasts. Another blast hit a human target. The innocent victim was Rapheal Hill, for whose death appellant was tried and convicted and the judgment affirmed, supra.

We will not delineate all the evidence but only so much as points to the guilt of the appellant as the one who fired one or more of the blasts, or if not, who was an accessory to the shooting and thereby became a principal and subject to the instant indictment. We will further advert to this accessorial principle in this opinion.

According to the evidence, there were five male blacks who arrived at the Lounge late in the evening of February 14, 1972. One of the persons was William Johnson, a witness for the state. These five blacks were accompanied in another automobile by appellant and Aaron Jones. The latter two, appellant and Jones, took seats along with another black at another table. Four other persons were seated at another table nearby.

It appears from the evidence that an argument ensued between one of the four at the nearby table and one at the table where the appellant and Jones were sitting. One of these four stood up and was talking to Aaron Jones. He sat back down, and then stood back up with what appeared to be a steak knife in his hand. It appears from the evidence that this witness knew both appellant and Jones. The man with the steak knife sat back down, and about fifteen minutes later, Jones and Walton said they were going to leave. This was part of the testimony of William Johnson, who was one of the five that arrived in a car when Jones and Walton arrived in the other car.

It also appears from the evidence of William Johnson that Jones and Walton left for the outside and stayed gone for a minute or two minutes. As they went out the door, the "guy with the knife in his hand was playing with it and saying they wanted to fight." When Jones and Walton came back in the door, they looked at the "guy", who jumped up from the table when the shooting started.

This same witness further testified that Jones and Walton had on coats under which "it looked like it could have been a gun barrel or a rod. It was just long and sticking out. It looked like a pipe or a gun barrel." Then there were two loud blasts. The witness stated that at that time he was a friend of Wilman Walton and Aaron Jones. He testified he saw something under the coats of both Walton and Jones.

Also he testified the only gun he saw was that one in the hands of the bartender.

Michael Johnson, a brother of William Johnson, was then called as a witness for the state. He testified that one of the four men at the adjoining table remarked "which nigger wanted to go like that." He did not know to whom this person was talking. Two got up and one of these had a steak knife. At this time, Aaron Jones and Wilman Walton walked out the door, and in about a minute or two they came back in the front door. They had on coats under which one had something that looked like a barrel. "That's when the shooting occurred and I ran out." He did not see the bartender shoot. The witness said he had known appellant and Jones two or three years. He testified on cross-examination that he could not identify who walked back in, but on re-direct he affirmed his prior testimony that Aaron Jones and Wilman Walton walked out and back in.

It appears from the testimony of J. E. Webb, Sergeant of the Birmingham Police Department, after being qualified, that this wound on Wayne was made by a shotgun. The witness further testified that, after he received a telephone call the next day, he placed Aaron Jones under arrest and took him to City Hall; that he and another Detective went to 327 3rd Avenue; that they took Aaron Jones to this address where they took in possession two shotguns.

On cross-examination the witness testified that on the night of the alleged shooting at the Lounge, he found the dead body of Rapheal Hill with a twelve inch hole in his chest.

It further appears that the proprietor, Fred Jones, showed the witness a pistol which one witness testified the proprietor found after the shotguns were fired. The Sergeant further testified that he saw Wilman Walton that night at University Hospital; that he observed a bullet wound in Walton's leg; that he did not recover the bullet, and he did not know from whose weapon the bullet came.

The witness further testified that the black female occupying the house where the two shotguns were found was Aaron Jones' sister; that he did not have a search warrant; that Aaron Jones got one of the guns from under a bed and the other one was found when he was not present; that Aaron Jones did not live where he produced the guns. The two shotguns were thereupon introduced and admitted in evidence over the defendant's timely and appropriate objection.

As we observed in Walton v. State, supra, it does not positively appear from the evidence who fired the two shots. It does appear that two shotgun blasts were fired; that Wayne was shot in the arm by one of the blasts and Rapheal Hill fell mortally wounded by another of the blasts. There was no evidence that anyone besides Jones and the appellant had shotguns. In fact, witnesses testified that they saw no other guns. The evidence supports an inference that Jones and Walton each had shotguns partly concealed with the barrels protruding under their coats when they came back into the Lounge.

We think the jury was amply justified in inferring from the evidence that appellant was a guilty participant.

We quote Title 14, § 99, Recompiled Code of Alabama 1958, as follows:

"Conspiracy to commit certain felonies. —Any two or more persons conspiring together to commit an assault on another with intent to murder, maim, rob, ravish, or to commit the crime against nature, or who attempt to poison any human being, or to commit murder by any means not amounting to an assault, shall each themselves be guilty of a felony, and shall, on conviction, be imprisoned in the penitentiary of the state of Alabama for not less than one year, and not more than ten years."

In Jones v. State, 174 Ala. 53, 57 So. 31, our Supreme Court quoted with approval a pronouncement in Morris v. State, 146 Ala. 46, 41 So. 274, as follows:

" 'When by prearrangement, or on the spur of the moment, two or more persons enter upon a common enterprise or adventure, and a criminal offense is contemplated, then each is a conspirator, and if the purpose is carried out each is guilty of the offense committed, whether he did any overt act or not. This rests on the principle that one who is present, encouraging, aiding, abetting, or assisting [or who is ready to aid, abet, or assist] the active perpetrator in the commission of the offense, is a guilty participant, and, in the eye of the law, is equally guilty with the one who does the act. Such community of purpose, or conspiracy, need not be proved by positive testimony. It rarely is so proved. The jury are to determine whether it exists, and the extent of it, from the conduct of the parties and all the testimony in the case.' "

The Supreme Court in the *Jones* case, supra, further observed:

"Aid and abet 'comprehend all assistance rendered by acts or words of encouragement or support or presence, actual or constructive, to render assistance should it become necessary. No particular acts are necessary. If encouragement be given to commit the felony, or if, giving due weight to all the testimony, the jury are convinced beyond a reasonable doubt that the defendant was present with a view to render aid should it become necessary, then that ingredient of the offense is made out.' Raiford's Case, 59 Ala. 106; Tally's Case, 102 Ala. [25] 65 et seq., 15 So. 722."

We cited *Jones* and *Morris*, supra, in Lee v. State, 51 Ala.App. 332, 285 So.2d 495, certiorari denied, 291 Ala. 787, 285 So.2d 500. In *Lee*, there was no positive evidence which showed who fired the fatal shot, the husband or the wife. We held that one was a principal and the other an accessorial principal in the homicide. It made no difference as to which one fired the shot because either was guilty under Title 14, § 99, supra.

Further observing as in Walton v. State, supra, it makes no difference in law which one in the instant case fired the shotgun blasts, because both were principals; one fired the shot that wounded Henry Charles Wayne, and the other, under the evidence was aiding and abetting in the shooting, as the jury could infer and probably did infer from the evidence. This inference could be drawn from the fact that appellant and Aaron Jones went outside the Lounge at the same time and came back into the building together, each with a shotgun protruding from which the two blasts were fired. There were other evidential circumstances supporting the jury's verdict that fastened guilt on appellant as charged in the indictment.

We have not delineated all the evidence in detail, but we have set out enough to sustain the view that appellant and Jones were on a rampage of violence inside the Lounge, each armed with a shotgun; that when the sounds from the shotgun blasts subsided, one patron lay severely wounded and the other dead from a shotgun wound. Appellant and Jones hurriedly left together. So far as the record reveals, both victims were innocent and free of any disturbance.

Appellant's only insistence in this brief is that the trial court committed reversible error in admitting in evidence over his objection the two shotguns which Aaron Jones retrieved at the home of his sister and delivered to Sergeant Webb. We hold such admission was free of prejudicial error.

While it is not shown by positive evidence that these two shotguns were the ones that were fired by the defendant and Jones or that either owned them, we think the evidence plainly shows that Jones was under arrest for the shooting of Wayne when he delivered possession of these two weapons to Sergeant Webb; that he knew at the time he was under arrest for his participation in the Lounge rampage.

Being so involved, the jury could infer and probably did that the weapons were used and played a part in the res gestae at the Lounge. Such an inference being available to the jury and being part of the res gestae as the jury could have determined, we hold that the guns were admitted without prejudice to the appellant. This is true even though there is no positive evidence as to who actually owned the guns.

The evidence was sufficient to support the jury's verdict of guilt in the instant case. Such verdict was based on evidence that appellant was an actual principal or an accessorial principal, and that he played a part in the shooting by the use of the shotguns which Jones produced and delivered to Sergeant Webb.

We further advert to appellant's contention that the admission of the guns was prejudicial to the appellant. It clearly appears from the evidence without dispute that Henry Charles Wayne was severely wounded by a shotgun blast and Raphael Hill was killed by like means, both in the Lounge and almost simultaneously. We fail to see that the identity of the shotgun or shotguns sheds any light on this particular issue. There was no question but that these two were shot by shotguns.

Absent such relevancy, it appears that the admission in evidence of these guns was not prejudicial to the appellant. If they were the guns used in the shooting, then they were admissible. Appellant cannot complain of error by the trial court in either event.

We decline to disturb the jury's verdict and the ensuing judgment.

The foregoing opinion was prepared by the Hon. Bowen W. Simmons, Supernumerary Circuit Judge, serving as a Judge of this Court under § 2 of Act No. 288, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.

Affirmed.

All the Judges concur.