375 So.2d 266 (1978)
Wayne Eugene RITTER, alias
v.
STATE.
1 Div. 837.
Court of Criminal Appeals of Alabama.
August 9, 1978.
Rehearing Denied August 29, 1978.
Al Pennington, Mobile, Francis A. Poggi, Jr., Fairhope, for appellant Ritter.
*267 William J. Baxley, Atty. Gen., and John B. Rucker, III, Asst. Atty. Gen., for the State, appellee.
John D. Whetstone, Executive Director, Office of Prosecution Services, Montgomery, amicus curiae.
After Remandment by the Supreme Court
TYSON, Judge.
The Supreme Court of Alabama did remand this cause to this Court for consideration of the applicability of the provisions of Title 13-11-2(b), Code of Alabama 1975, to the appeal of Wayne Eugene Ritter, which section reads as follows:
"Evidence of intent under this section shall not be supplied by the felonymurder doctrine."

I
In our original consideration of the appeal in this cause, we did not write to this issue as the same was not asserted in the trial court or argued there or asserted or argued on original presentment of this appeal in this Court.
Our present consideration of the evidence in this cause and the foregoing statute lead us to the firm conclusion that Wayne Eugene Ritter was an active participant in the murder of Edward A. Nassar, having planned with John Louis Evans, III, the drive to Mobile from Biloxi, Mississippi, to rob a sporting goods store or pawn shop. Appellant Ritter rode with Evans through the City of Mobile, Alabama, looking at, in his own words, about half a dozen different places before deciding on the pawn shop being operated by the deceased, Nassar. According to Ritter's own statement, "We decided on this place because there was only one man there and it was a small shop .. I walked past the store several times wearing a blond wig to see what was going on in the store."
The State's evidence further indicated the two men circled the block at least twice, and Appellant Ritter entered the store first and engaged Nassar in conversation. Ritter asked Nassar to let him examine a "Colt Cobra pistol" which Ritter then opened and began placing bullets in the cylinder. At this time Evans had drawn his own .38 caliber Dixon. According to both men, Nassar ran toward the office area to obtain a weapon. At this point, Evans fired his pistol at Nassar. The two men then fled, taking the pistol which Ritter obtained from Nassar with them.[1]
In brief, it was simply a matter of logistics that Ritter did not also fire his weapon, i. e., his companion, Evans, according to his own statement, was in his line of fire.
In our original opinion, and in this extension, this Court has carefully reviewed all of the evidence and did not, and does not now, rely upon the felony-murder doctrine to imply evidence of intent on the part of Ritter in this cause.
To the contrary, Ritter's active participation in the Nassar murder supplies the requisite intent for an intentional killing necessary under Section 13-11-2(a), Code of Alabama 1975, which is the aggravated offense of robbery when the victim is intentionally killed by the defendant.

II
We are of course aware of the provisions of Section 13-9-1, Code of Alabama 1975 (formerly Title 14, Section 14, Code of Alabama 1940), which deal with principal and accessory. The thrust of these provisions of law is discussed in Lee v. State, 51 Ala.App. 332, 285 So.2d 495, cert. denied, 291 Ala. 787, 285 So.2d 500; and Gray v. State, 52 Ala.App. 481, 294 So.2d 448, and authorities cited therein.
This Court does not rely upon these provisions of law in arriving at its conclusions in this case as we consider both Evans and Ritter to be co-principals, each equally responsible for the death of Edward A. Nassar.

*268 III
We have again reviewed the evidence in this cause carefully and are firmly of the opinion that there is here shown an intelligent and understanding plea of guilty in this cause by Wayne Eugene Ritter, as well as John Louis Evans, III, and that such was done after full explanation of their constitutional rights by Ritter's competent counsel, and additionally a further explanation by an able and distinguished trial judge. Such pleas of guilty were entered following such explanation, and the record reflects that such were freely and voluntarily done without any threat, intimidation, coercion, hope of reward, or other type of inducement whatsoever.
Inasmuch as Wayne Eugene Ritter and John Louis Evans, III, each, having entered a voluntary, intelligent, and understanding guilty plea, the sole issue reserved for appeal in this cause was the constitutionality of the Alabama statute.
Inasmuch as this issue has been determined adversely to both appellants, not only by this Court, but by the Supreme Court of Alabama, In re Jerry Wayne Jacobs, Ala., 361 So.2d 640 (1978), and Ex parte John Louis Evans, III, Ala., 361 So.2d 672 (1978), we are of the opinion that other issues were intelligently and understandingly waived by Appellant Ritter, as well as by Appellant Evans.

IV
Further, because of the seriousness of this cause, and the death penalty as imposed by the trial judge in this cause, we have considered the applicability of Lockett v. Ohio, ___ U.S. ____, 98 S.Ct. 2954, 57 L.Ed.2d 973; and Bell v. Ohio, ___ U.S. ____, 98 S.Ct. 2977, 57 L.Ed.2d 1010, both decided July 3, 1978, and are of the opinion that the trial judge here gave full consideration to all possible mitigating circumstances before imposing the sentence of death by electrocution.
This Court has also again weighed the particular circumstances of this heinous crime, and is of the opinion that the sentence as set by the trial judge should be left in full force and effect.
Having therefore answered the remand of the Supreme Court of Alabama, we do hereby affirm the sentence of death by electrocution as to Wayne Eugene Ritter, as set by the trial judge in this cause.
The judgment is affirmed.
AFFIRMED.
DeCARLO, J., concurs.
BOOKOUT, J., concurs specially and files opinion in which HARRIS, P. J., joins.
BOWEN, J., concurs specially and files opinion.
BOOKOUT, Judge, concurring specially:
I concur in the result of the opinion, but I do not concur in the statement that the accomplice statute has no application to the instant case. I likewise would make further comment on the reason why the felony-murder doctrine cannot be used to supply intent in the instant charge.
The sole and simple reason why the code does not allow the felony-murder doctrine to supply intent is because intent is not an element of the felony-murder doctrine. At early common law, any homicide occurring during the commission of any felony made all participants guilty of murder whether the killing was intentional or not. 4 Blackstone Commentaries 200-201. However, later English cases came to apply the doctrine only to acts known to be dangerous to life and likely to cause death. Regina v. Serne, 16 Cox Crim.Cas. 311 (1887). In 1957 England abolished the felony-murder rule by the Homicide Act, 5 & 6 Eliz II, c. 11. Prior to 1957, the English courts held that only acts of violence committed in the course of a violent felony could raise an unintentional killing to murder. R. v. Betts and Ridley (violent blow during robbery) 22 Crim. App.R. 148 (1930); R. v. Stone (attempt to rape) 53 T.L.R. 1046 (1937); R. v. Jarmain (accidental discharge of pistol during robbery) 31 Crim.App.R. 39 (1946).
In this country, the felony-murder doctrine varies from state to state. In its most *269 basic form, the doctrine provides "that a homicide is murder if death results from the perpetration or attempted perpetration of a felony." 50 A.L.R.3d 399. A primary function of the doctrine is to relieve the prosecution from proving actual malice or intent to kill on the part of a defendant in the commission of a felony which results in a homicide. The malice involved in the perpetration of the felony is transferred to the commission of the homicide under such a doctrine even though the killing was accidental or unintentional. Alabama has modified the common law in this regard.
Alabama's first degree murder statute, § 13-1-70, Code of Ala.1975, applies only to homicides "committed in the perpetration of, or the attempt to perpetrate, any arson, rape, robbery or burglary." Intent to kill is not an element of that doctrine. Thus, that doctrine could hardly supply intent for the instant charge of "robbery or attempts thereof when the victim is intentionally killed by the defendant." Therefore, if the new capital felony statute is to be applied to accomplices, it must be by some other doctrine of the law.
Section 13-9-1, Code of Ala.1975 (formerly Title 14, § 14) states:
"The distinction between an accessory before the fact and a principal, between principals in the first and second degrees, in cases of felony, is abolished; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense or aid or abet in its commission, though not present, must hereafter be indicted, tried and punished as principals, as in the case of misdemeanors." (Emphasis supplied.)
The accomplice statute has been applied to all felonies, both capital and non-capital, in the past. It has been applied to charge an accomplice as a principal likewise in cases where specific intent to commit a crime must be charged on the part of the principal. In order to convict an accomplice of murder pursuant to that statute, it has been necessary to show that the accomplice had a previous understanding to kill or injure the deceased, or had knowledge of the intent to kill on the part of the co-defendant. In Jordan v. State, 81 Ala. 20, 1 So. 577 (1887), the Supreme Court stated:
"... When a particular intent or formed design is requisite to constitute an offense, knowledge of its existence, and a common purpose to perpetrate the offense, must be shown before a person can be convicted of aiding and abetting. We so held on the former appeal.Jordan v. State, 79 Ala. 9; State v. Hildreth, 51 Amer.Dec. 369, and notes."
In Tanner v. State, 92 Ala. 1, 9 So. 613 (1890), the Court stated:
"... The accomplice, as we have seen, is criminally responsible for acts which are the direct, proximate, natural result of the conspiracy formed. He is not responsible for any special act, not within the scope of the common purpose, but grows out of the individual malice of the perpetrator. 1 Wharton Crim. Law, § 397."
Since the appellant cannot be brought within the purview of the new capital felony statute by way of the felony-murder doctrine, the only vehicle remaining is the accomplice statute. It is my opinion that the accomplice statute does bring an aider and abettor within the purview of the capital felony statute.
Whether Ritter was an aider and abettor must be determined from the evidence. This court cannot apply § 13-11-2(a)(2) by merely making the assertion that the accomplice was "an active participant in the crime" where intent is an essential element. I believe the facts of the instant case bring the appellant within the capital felony statute via the accomplice statute. He could be charged equally with Evans for the murder of Edward Nassar even though he did not personally fire the weapon. In planning the robbery, Evans and Ritter had discussed that they might have to kill someone during the course of the robbery. Ritter stated that he would have shot Nassar if Evans had not been in his line of fire. Each would therefore be guilty equally under the accomplice statute. Howell v. State, Ala.Cr. App., 339 So.2d 138 (1976).
*270 The legislature did not foreclose the use of the accomplice statute by providing that "evidence of intent under this section shall not be supplied by the felony-murder doctrine." Other sections of the new capital felony statute recognize that an accomplice may be tried and convicted as a principal. The new statute allows the trial judge to consider as an aggravating circumstance that "the capital felony was committed while the defendant was engaged or was an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit, rape, robbery, burglary, or kidnapping for ransom." It likewise allows the circuit judge to consider as a mitigating circumstance the fact that "the defendant was an accomplice in the capital felony committed by another person and his participation was relatively minor." Those references within the capital felony statute, coupled with § 13-9-1, supra, (the accomplice statute), convince me that Ritter could be tried, convicted, and sentenced to death under the capital felony statute.
BOWEN, Judge, concurring specially:
I join in the special concurrence of Judge Bookout and concur only in the result, but not the language, of the opinion by Judge Tyson.
Besides those points raised in Judge Bookout's opinion, I disagree with the statement that "other issues were intelligently and understandingly waived by Appellant Ritter, as well as by Appellant Evans".
The plain error doctrine of criminal appellate review is applicable to capital cases in Alabama. Section 12-22-241, Code of Alabama 1975 (formerly Title 15, Section 382(10), Code of Alabama 1940, Recompiled 1958).
"The very Alabama statute (Ala.Code, Tit. 15, § 382(10) (1958)) that provides automatic appeal in capital cases also requires the reviewing court to comb the record for `any error prejudicial to the appellant, even though not called to our attention in brief of counsel.' Lee v. State, 265 Ala. 623, 630, 93 So.2d 757, 763. The automatic appeal statute `is the only provision under the Plain Error doctrine of which we are aware in Alabama criminal appellate review.' Douglas v. State, 42 Ala.App. 314, 331, n. 6, 163 So.2d 477, 494, n. 6. In the words of the Alabama Supreme Court:
"`Perhaps it is well to note that in reviewing a death case under the automatic appeal statute, * * * we may consider any testimony that was seriously prejudicial to the rights of the appellant and may reverse thereon, even though no lawful objection or exception was made thereto. [Citations omitted.] Our review is not limited to the matters brought to our attention in brief of counsel.' Duncan v. State, 278 Ala. 145, 157, 176 So.2d 840, 851."

Boykin v. Alabama, 395 U.S. 238, 241, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969).
For this reason and those stated by Judge Bookout, I can concur only in the result reached in Judge Tyson's opinion.
NOTES
[1] Ritter's statement at trial is found in Volume II (R. pp. 218-220), and is quoted verbatim in this Court's original opinion.