[Jones v. The State.]

# Jones v. The State.

## Murder.

(Decided June 14, 1911. Rehearing denied Dec. 21, 1911. 57 South. 31.)

1. *Conspiracy; Co-conspirators; Persons Liable.*—Where, by prearrangement or on the spur of the moment, two or more persons enter into a common enterprise or adventure having in contemplation the commission of a criminal offense, each is a conspirator, and if the common purpose is carried out, each is guilty whether he did any overt act or not, the theory being that one who is present encouraging, aiding, abetting or assisting the active perpetrator in the commission of the offense, is a guilty participant, and in law is equally guilty with the one doing the act.

2. *Same; Aid and Abet.*—The words, "aid and abet," comprehend all assistance rendered by acts or words of encouragement or support or presence, actual or constructive, to render assistance should it become necessary, and no particular acts are essential. If encouragement is given to commit the felony, or if the jury are convinced beyond a reasonable doubt that a defendant was present with a view to render aid should it become necessary, after giving due weight to all the testimony, then the fact that defendant is an aider or abettor. is sufficiently made out.

3. *Same; Pre-arrangement; Pre-concert.*—In the absence of preconcert between persons charged with crime, the mere presence of one of them to give aid, if necessary, is not an aiding or abetting, unless the principal actor knew of such presence with the intent to aid.

4. *Same; Jury Question.*—The evidence in this case examined and held sufficient to require the questions as to whether community of purpose in the premises existed between the defendant, and the others by whom the killing was actually accomplished, or whether defendant aided or abetted them, to be submitted to the jury for its determination.

5. *Same; Circumstantial Evidence.*—The evidence of community of purpose or conspiracy which will render one a party to another's criminal act need not be proven by positive evidence, but may be inferred from attendant facts and circumstances.

6. *Homicide; Evidence; Soberness of Deceased.*—The condition of the deceased as to soberness several hours before the tragedy, is not admissible.

7. *Same; Evidence.*—Evidence of what the deceased told the witness several hours before the killing as to how he received certain other wounds from which he was suffering, was not admissible.

8. *Trial; Participation in by Counsel.*—There was no error prejudicial to defendant in the action of the court in not preventing coun-

[Jones v. The State.]

sel to assist in the prosecution although it was announced before the selection of the jury that the counsel assisting in the prosecution would not thereafter participate in the trial, where the court qualified the jury as to relationship and connection with the firm of which such assisting counsel was a member, it not appearing that defendant would have employed his peremptory challenges otherwise than he did, had he known that such counsel would have participated in the trial, nor that he would have challenged any member of the jury when informed that such counsel would participate; the court has no right to forbid the entrance of properly employed counsel in the trial at any stage of the proceedings.

9. *Charge of Court; Sufficiency of Evidence.*—The court is not required to give instructions asserting that there is no evidence as to a particular proposition.

10. *Evidence; Declaration of Third Person.*—A witness was not entitled to testify as to the feelings entertained by her father towards a co-defendant who had been granted a separate trial.

11. *Self Serving Declaration.*—Where the theory of the state was that defendant and others, among them one J., intercepted another and the deceased and killed the deceased, the alleged declarations of J. made to his wife that he was going to hunt for his mare, made as he left the house on that occasion was self serving and inadmissible.

12. *Witnesses; Cross Examination; Scope.*—Where the prosecution was against J., and others for murder, it was proper to permit the state to cross examine the witness as to when, where, and how many times the witness saw J. on that day; J.'s conduct on that particular day being a legitimate subject of inquiry.

13. *Same; Impeachment.*—The fact that a witness had been talking with another person about the case was irrelevant where there was no claim that the witness had been improperly influenced as to his testimony by such person.

14. *Same; Impeachment; Experts.*—Where a physician was examined for the defendant as an expert, and testified as to the character and location of the wounds on deceaseds' head, and further testified that he did not see the skull, while before the grand jury as he was not examined by that body, it was proper to permit the state to show that his statement that he did not testify before the grand jury was erroneous as affecting his credibility.

APPEAL from Shelby Circuit Court.

Heard before Hon. JOHN PELHAM.

Will Jones was convicted of murder and he appeals. Affirmed.

BROWNE, LEEPER & LAPSLEY, for appellant. Counsel discuss the action of the court in permitting counsel to come in and assist in the prosecution after it had been announced that such counsel would not assist, and

the jury had been drawn under that impression, but they cite no authority in support of their contention. Counsel discuss the evidence, but without citation of authority. The part of the court's oral charge excepted to was erroneous.—*Tidwell v. The State,* 70 Ala. 44; *Jordan v. The State,* 79 Ala. 9; *Frank v. The State,* 27 Ala. 37. Charge 23 should have been given.—*Jordan's case, supra; Frank's case, supra.* Charge 29 should have been given.—*Sanders v. The State,* 134 Ala. 85. Charge 50 should have been given. Counsel discuss other charges, but without further citation of authority.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. Counsel discuss the errors as to evidence assigned, and also the action of the court in permitting counsel to assist in the prosecution, and insist that no error was committed, but they cite no authority in support of their contention. It was competent on cross examination or in rebuttal to show that the physician had testified before the grand jury.—*Wynn v. The State,* 155 Ala. 90. The court's oral charge was correct.—*Tidwell v. The State,* 70 Ala. 33. On this same authority, the court properly refused the charges requested by the defendant.

McCLELLAN, J.—The indictment, comprising two counts, charged Roy Cardwell, Will Jones, Jim Jones, and Dock Jones, with the murder of Alonzo Jones. Upon a severance, this defendant (Will Jones) was tried alone.

In the first count, the allegation is that the homicide was committed "by striking him with a rock," and, in the second count, "by striking him with a rock or rocks, and by assaulting and beating him."

While there was some evidence that this defendant had in his hand or pocket, a short time before the fatal difficulty, a rock or rocks, there was no evidence that *he,* at any time actually struck deceased with a rock or rocks. His guilt of this homicide, under this indictment, must, therefore, depend upon whether he aided or abetted the person who did strike the deceased with a rock or rocks, in causing his death, or whether he so conspired or preconcerted with such person as to render him culpable in consequence of the act of the person who did strike the deceased the fatal blow with the rock or rocks.

The substantive law, applicable to this prosecution— to the determination of the guilt vel non of the accused —has been often declared by this court. These expressions of presently pertinent and controlling principles and rules are quoted, that brevity and accuracy may be better conserved.

By Code 1907, § 6219, it is provided that "all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid or abet in its commission, though not present, must hereafter be indicted, tried, and punished as principals, as in the case of misdemeanors."

"When by prearrangement, or on the spur of the moment, two or more persons enter upon a common enterprise or adventure, and a criminal offense is contemplated, then each is a conspirator, and if the purpose is carried out each is guilty of the offense committed, whether he did any overt act or not. This rests on the principle that one who is present, encouraging, aiding, abetting, or assisting  *  *  *  the active perpetrator in the commission of the offense is a guilty participant, and, in the eye of the law, is equally guilty with the one who does the act. Such community of purpose,

[Jones v. The State.]

or conspiracy, needs not be proved by positive testimony. It rarely is so proved. The jury are to determine whether it exists, and the extent of it, from the conduct of the parties, and all the testimony in the case."—*Morris v. State*, 146 Ala. 66, 88, 41 South. 274, 280—collecting many authorities.

*Aid* and *abet* "comprehend all assistance rendered by acts or words of encouragement or supports or presence, actual or constructive, to render assistance should it become necessary. No particular acts are necessary. If encouragement be given to commit the felony, or if, giving due weight to all the testimony, the jury are convinced beyond a reasonable doubt that the defendant was present with a view to render aid should it become necessary, then that ingredient of the offense is made out."—*Railford's case*, 59 Ala. 106; *Tally's Case*, 102 Ala. 65 et seq., 15 South. 722.

If there is no prearrangement or preconcert, mere presence, with the intent to give aid if necessary, is not *aiding* or *abetting* "unless the principal knew of the presence, with intent to aid, of such person."—*Tally's Case, supra; Raiford's Case, supra; Morris' Case, supra;* 1 Whar. Cr. Law, § 210.

"Conspiracy, or a common purpose to do an unlawful act, need *not* be shown by positive testimony. Nor need it be shown that there was prearrangement to do the specific wrong complained of."—*Martin's Case*, 89 Ala. 115, 8 South. 23, 18 Am. St. Rep. 91.

"So, if being present without preconcert," two or more persons "entered into a common illegal purpose, and one or more of them did the deed of violence, and the others were present, aiding, abetting, encouraging, or giving countenance to the unlawful act, or ready (with the perpetrator's knowledge of their intent to render assistance to him if necessary—*Tally's Case, su-*

*pra*) to lend assistance if it should become necessary,
* * * the other or others are as guilty as the actor or
actors."—*Amos's Case,* 83 Ala. 1, 4, 3 South. 749, 751
(3 Am. St. Rep. 682).

"To establish a conspiracy, it is not always necessary
to show prearrangement to do the particular wrongful
act committed. But it is true that, when two or more
persons enter upon an unlawful purpose with a com-
mon intent to aid or encourage each other in carrying
out their common design, they are each responsible,
civilly and criminally, for everything which may con-
sequently and proximately result from such unlawful
purpose, whether specially contemplated or not."—
*Green's Case,* 97 Ala. 59, 12 South. 416, 15 South. 242.

This tragedy occurred a short distance from the scene
of a picnic. According to a phase of the testimony, and
there was much conflict in it, deceased was, when he
received the fatal blow, on his "all fours," with his
head forced to the ground. The defendant was upon
his back, striking him, on the head and back with his
fists. At this juncture, Roy Cardwell, from a distance
of about five feet, threw a rock, evidently with great
force, at the head of deceased, striking him in the back
of the head, and thereby causing his almost immediate
death. On the picnic grounds there was a dance plat-
form. Near it ran a spring branch. Deceased and one
Connell came to the grounds late in the afternoon. De-
ceased was drunk. Jim Jones, and his two sons Dock
and Will (defendant), as was Roy Cardwell, were
there, the first named appearing, from some of the evi-
dence, to have had a part in the management or direc-
tion of the occasion. From a phase of the testimony
it appears that Jim Jones undertook to restrain his
son Dock from responding to a request of deceased for
a talk with him. Soon after this, and after deceased

[Jones v. The State.]

and Connell had crossed the branch from the side of it on which Jim Jones was, Jim Jones, some of the testimony went to show, made a hostile remark of a character readily susceptible of the interpretation that it referred to deceased and Connell, and which was capable of being understood as commanding the "boys" to take extreme measures against deceased and Connell if they undertook to recross the branch; to which Dock replied, "I'll do it." Deceased went off with Connell, something like 100 yards, from the picnic grounds. They stopped on the roadside, deceased sitting or lying down. Within a few minutes Jim Jones and Charley Barnes went in the same general direction, but by another road. The defendant's contention was that Jim Jones and Barnes were in search of Jim Jones' horse. The theory of the prosecution seems to have been that their purpose was to intercept deceased and Connell or to strike the road on which they were, beyond them, and to return by the place where deceased and Connell were. Dock Jones, Roy Cardwell, and defendant remained upon or about the platform. Jim Jones and Barnes, according to some of the testimony, did come by deceased and Connell; whereupon Jim Jones and Connell, or deceased, or both, became involved in a controversy. There was testimony from which it could be reasonably found that Barnes, during, or immediately after, this controversy, returned to the platform and had a few words with Dock Jones; that Dock and the defendant, almost immediately, started at a rapid gait toward the place at which deceased and Connell were; that Roy Cardwell followed them a few steps behind, he being in a run; that Dock, upon his arrival at the place, first encountered Connell and entered into a fight with him; that defendant passed on a few feet, and, deceased having gotten up, he (defend-

ant)· assailed deceased with his fist, knocking him down·; and that Roy Cardwell came up, and, while the situation and action, in respect of defendant and deceased, was as before stated, Cardwell struck deceased in the head with a rock, hurled with great force.

There was testimony tending to show that at times during the period intervening, stated to have ranged from 45 minutes down to 15 minutes between the arrival of deceased at the picnic grounds and the fatal blow, Jim Jones, Roy Cardwell, and defendant each had a rock in his hand or pocket.

Under the facts, acts of the parties, and circumstances shown by phases of the testimony, an outline (only) of which we have given, the questions, whether there was a conspiracy, prearrangement, entered into by Jim, Dock, and Will Jones (defendant) and Roy Cardwell, to assail deceased and Connell, or, whether there was a community of unlawful purpose, in the premises, existing between Dock and Will Jones and Roy Cardwell, or whether defendant aided or abetted Cardwell in the premises, were for the jury. The court took that view and so correctly submitted those issues to the jury.

A great number of special charges were requested by defendant. Many were given. A large number were refused. Those refused are urged, in brief, as being erroneously so treated. The court has, with great care, considered each of these charges refused, and so in connection with those given at defendant's request. The major part of those refused were faulty in their pretermission or reference, in hypothesizing defendant's ac-· quittal, to the jury issues of conspiracy, or prearrangement, vel non, or community of purpose.

Some sought the instruction that there was *no* evidence of a stated proposition. Such charges may al-

ways be refused. They announce no legal proposition. Charge 50 is of this class. The remainder of those refused were covered by those given at defendant's request.

We discover no error in the exception to the excerpt from the oral charge of the court. It was a general statement of abstractly sound propositions.

There was no prejudicial error in the court's declining, on defendant's motion, to prevent counsel assisting the prosecution from taking part in the trial *after* the selection of the jury and *after* it had been announced before the selection of the jury that the counsel later taking part in the trial would not participate therein. The court qualified the jury as to relationship and connection with the firm, and its members, thus later entering upon the trial. It does not appear that defendant would have employed his peremptory challenges otherwise than he did when under the impression that the assisting counsel would not participate in the prosecution; nor that he would have so challenged any member of the jury in the box when informed that assisting counsel would participate in the trial. We know of no right of any court to forbid the entrance of properly engaged counsel into a trial at any stage of the proceedings.

The condition of deceased, as to soberness, several hours before the tragedy was irrelevant. The evident object of questions in that connection and of that with respect to blood being on deceased's face about 1:00 o'clock before his death at 5:00 o'clock, was to thereby account for bruises and wounds, other than that inflicted by Cardwell, seen on his face and head after his death. The court otherwise gave defendant the full benefit of the testimony of his witnesses to that

effect. There was no error in sustaining objections to the questions indicated.

And in this connection, what deceased told the witness Avery, several hours before the killing, as to how he received the wounds, was obviously inadmissible.

Jim Jones not being on trial, the court properly disallowed the question to Venna Hand, seeking to show her father's state of feeling toward Jim Jones.

There was no error in allowing, over defendant's objection, the questions of the solicitor, on cross-examination of Rosa Roden, with reference to when, where, and how many times she saw Jim Jones the day of the tragedy. The court did not thereby permit undue latitude on that character of examination of a witness for the defendant. The conduct and acts of Jim Jones on that day were legitimate subjects of inquiry upon the issues in the case.

Whether Barnes, a witness for defendant, had been talking with Mr. Hand, another witness, about the case was irrevelant. It was not attempted to be shown that Barnes had been improperly influenced in respect of his testimony by Hand.

The alleged declaration of Jim Jones to his wife that he was going to hunt his mare, a statement tending to refute the prosecution's theory that his journey, on the occasion, was with a view to intercept or to encounter deceased and Connell, was inadmissible. It was self-serving. It was no more than a statement of his motive or purpose.

Dr. Miller was introduced by the defendant, and testified as an expert. Among other subjects touched upon by him in his testimony was the character and location of alleged wounds, etc., upon the exhumed skull of deceased. In this connection he testified, substantially, that he did not see the skull while before the grand

[Pope v. The State.]

jury returning the indictment, for the reason that he was not examined before that body. It was competent for the state to show, in rebuttal, that his statement in this regard was erroneous. The matter went to his credibility and was not, as is obvious, immaterial.

No prejudicial error appearing, the judgment is affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON and MAYFIELD, JJ., concur.