L. S. MOORE, Retired Circuit Judge.
The appellant was indicted, tried, and convicted for the offense of robbery. Final judgment was entered by the trial court in accordance with the verdict of the jury. The appellant gave notice of appeal; hence this appeal.
Mary Lois Johnson, a witness for the State, testified in substance, that on January 11, 1976, she was an employee of “Magic Market” on Forest Hill Drive in Montgomery, Alabama. About 10:00 P.M. she was talking on the phone to her sister when two young men, wearing stockings over their faces, came in the store. The one in front had a pistol. He walked up to her and said: “Well, come on, get back in the back.” Johnson said she dropped the phone and did not “hang it up.” She got in the back of the store in a bathroom and the man closed and locked the door. Johnson heard, them “fooling” with the safe and then silence for a time. She stayed in the bathroom for awhile and when she came out she saw a girl with long dark hair and the girl ran. Johnson stated that she got a glimpse of the girl and that all the money in the cash register was gone when she got out of the bathroom. She testified there was one hundred and fifty dollars in the cash register when she came to work and it was all gone. Johnson said they had taken at least one hundred and fifty dollars. She said she could not identify either of the two men because they had stockings over their faces and that she was the only person in the store when the two men came in the store.
Jane Denim, manager of the “Magic Market”, the store involved in the robbery, testified that she checked the cash on hand and when Mary Lois Johnson went to work and again after the robbery. She said that three hundred and sixty-four dollars in cash and checks were taken in the robbery.
Kathy Young testified in substance that she, Calvin Kendricks and Rusty Gurley went to Angie and Ray Thompson’s apartment on Sunday, January 11, 1976 about 9:30 P.M. and that Angie Thompson, David *562 and Margaret Yarbrough were present in the apartment when they arrived. Young stated that she and those with her told David Yarbrough that they planned to rob “this” store. She testified that David said if they did it that way they would get caught, and that Margaret Yarbrough suggested that she (Young) go in the store and run the cash register and wait on customers and they would not get caught. Young stated that David Yarbrough, the appellant, said he would drive for them and let them off at a trailer behind Jones Tire Company, and then he would go around and park in front of the store across the street at the Dairy Queen. She testified that appellant said that when nobody was going in the store, he would blink the car lights. Young said she put on Margaret Yarbrough’s wig and Calvin and Rusty put on makeup, and they left the apartment. She testified that David Yarbrough drove the car and left them out at the back of Jones Tire Company, and went on to park the car at the Dairy Queen. Young said that when appellant blinked the car lights, Calvin and Rusty went in the store and put the employee in the back of the store. She said she then went into the store and waited on customers while the two men took the money and checks, and kept the employee in the back room. Young said that one hundred and twenty dollars was taken and that the employee, Mrs. Lois Johnson, was her aunt. Further, she said that as they left the store, Mrs. Johnson came out of the back of the store and saw her back as they were leaving.
Young further testified that for her involvement in the offense she was sent to Birmingham State Training School for girls.
Tom Coker, a detective with the Montgomery Police Department, testified in substance, that he took a written statement made by appellant on January 29, 1976. Before taking the statement he gave the appellant the “Miranda” warnings from a rights form. Coker testified that after reading the rights form to appellant, he signed the form “T. Coker, 071.” He stated that underneath his signature on the rights form was the following:
“I fully understand the foregoing statement and do willingly agree to answer questions. I understand and know what I am doing. No promise or threats have been made to me by anyone and no pressure of any kind has been made against me by anyone.”
Coker testified that appellant signed the statement immediately following the above.
We quote from the record the questions to said witness and his answers thereto:

“Q Right after you advised the Defendant, Mr. Yarbrough, of those rights, did you threaten him in order to get him to make a statement?
“A No, sir.
“Q Did you offer him any inducements in order to get him to make a statement? “A No, sir.
“Q Did you offer him any hope of reward or immunity from prosecution in order to get him to make a statement?
“A No, sir.
“Q All right. After you advised him of his rights, did he make any statement to you?
“A Yes, sir.
“Q Do you have that statement here with you now?
“A Yes, sir.
“MR. HILL: Your Honor, may we approach the Bench?
“THE COURT: Yes, sir.
“(Whereupon, the attorneys approached the Bench and there was a discussion held outside the hearing of the Jury and the Court Reporter.)
“THE COURT: Chief Ruppenthal, show the Jury to the jury room.
“(Whereupon, the Jury was excluded from the Court Room and the following .proceedings occurred outside the presence, of the Jury.)
*563 “MR. HILL: Your Honor, we would object to introduction of a statement at this time based on the fact that the State has not proved a sufficient ease against the Defendant, David Yarbrough, as being involved in the alleged crime and we would object to the admission of any statement.
“THE COURT: Before I rule on that motion, would you like to take the witness on Voir Dire concerning any of his Constitutional rights?
“MR. HILL: Yes, sir, as far as .
“THE COURT: Well, suppose you question him in that regard and then I’ll rule on your motion.
“VOIR DIRE EXAMINATION
“BY MR. HILL:
“Q Mr. Coker, was anyone else present with you in the room at the time?
“A Yes, sir.
“Q Who else was there?
“A Mr. Yarbrough’s wife, Margaret Yarbrough.
“Q Did the statement indicate her — was that the only person, you and David Yarbrough and Margaret Yarbrough?
“A Yes, sir.
“Q Did the statement indicate her being present at any time during any of the discussion before and after the robbery?
“A Yes, sir. She was present during the time of the discussion of the robbery.
“Q Did you not make either statements or very clear inferences to David Yarb-rough that if he did not give you a statement, whatever that statement may be, that his wife would be involved, also?
“A No, sir.
“Q Did anyone make that statement or inferences in your presence, to your knowledge?
“A Not to my knowledge.
“Q Was, in fact, his wife arrested?
“A No, sir, she was not arrested.
“Q And it’s your statement that nobody made any statements, inferences, or anything else to him to encourage or suggest that he make a statement to you?
“A Not to my knowledge.
“MR. HILL: I think that’s all the questions I have, your Honor. We still would object to admission, however, based on the fact that the State has not proven Defendant’s consent.
THE COURT: Motion hereby denied. Are we ready for the Jury to return?
“MR. HILL: Yes, sir.
“THE COURT: Show the Jury back in. “(Whereupon, the Jury was returned to the Court Room and the following proceedings occurred in the presence of the Jury.)”
Coker further testified that the appellant gave him a statement in writing, which was made in the presence of appellant’s wife. He said that appellant and appellant’s wife, Margaret, signed the statement and that Detective Humphrey signed as a witness to Margaret’s signature. The statement was read to the jury by this witness. In the statement the appellant said, among other things: that they all got in the ear and went behind the tire store; that he dropped out Rusty, Calvin and Kathy; that he started toward the house and thought about Rusty with that “damn pistol” and he parked at Forest Hill Shopping Center across the street from “Magic Market” and waited for them to go into the store and “laid down” in the front seat; that he looked up and saw them running out of the store and he went behind the tire store and picked them up and went home; and that he got about eleven dollars out of the money taken in the robbery. The statement was dated January 29, 1976.
When the State rested, appellant moved for a directed verdict based on the failure of the State to prove a sufficient case. That motion was denied by the trial judge.
The appellant did not present any witnesses or evidence and rested.
There were no exceptions to the court’s oral charge to the jury. All written charges requested by appellant were given by the trial judge except the following:
“Defendant Charge 1.
*564 “The Court charges that if you believe the evidence in this case you must find the Defendant not guilty.”
This charge was refused by the trial court.
In the light of the motion for a directed verdict and the refusal of appellant’s requested charge one we have set out the evidence at some length but not completely. We believe we have sufficiently answered all questions presented on this appeal.
We shall consider the appellant’s motion for a directed verdict and appellant’s requested written charge one, which is often referred to in law as the general affirmative charge in favor of a defendant.
Title 14, § 14, Code of Alabama 1940, Recompiled 1958, reads as follows:
“Section 14. The distinction between an accessory before the fact and a principal, between principals in the first and second degree, in cases of felony, is abolished; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid or abet in its commission, though not present, must hereafter be indicted, tried, and punished as principals, as in the case of misdemeanors.”
The common law did make distinctions between principal in the first degree and principals in the second degree, and between principals and accessories before the fact. The above quoted section of the code of this State abolished those distinctions and in substance and effect, declared all such participants in a felony to be equally guilty.
Under the evidence in the case before us the State proceeded on the theory that the evidence presented the appellant before the jury as what was known to the common law as a principal in the second degree and that the statute quoted makes him equally guilty with the principals in the first degree, the actual ’and personal perpetrators of the offense charged.
In State ex rel. Attorney General v. Talley, Judge, etc., 102 Ala. 25, 15 So. 722, the Supreme Court of Alabama in defining a principal in the second degree, as such was prior to the said statute known to the common law, said:
. . [A] principal in the second is one who is present at the commission of a felony by the hand of the principal in the first degree, and who being thus present aids or abets, or aids and abets the latter therein. The presence which this definition requires need not be actual, physical juxtaposition in respect of the personal perpetrator of the crime. It is enough, so far as presence is concerned, for the principal in the second degree to be in a position to aid the commission of the crime by others. It is enough if he stands guard while the act is being perpetrated by others, to prevent interference with them or to warn them of the approach of danger; and it is immaterial how distant from the scene of the crime his vigil is maintained provided it gives some promise of protection to those engaged in its active commission. At whatever distance he may be, he is present in legal contemplation if he is at the time performing any act in furtherance of the crime, or is in a position to give information to the principal which would be helpful to the end in view, or to prevent others from doing any act, by way of warning the intended victim or otherwise, which would be but an obstacle in the way of the consummation of the crime, or render its accomplishment more difficult.”
In Jones v. State, 174 Ala. 53, 57 So. 31, we find the following exposition of the law with reference to said statute:
“ ‘When by prearrangement, or on the spur of the moment, two or more persons enter upon a common enterprise or adventure, and a criminal offense is contemplated, then each is a conspirator, and if the purpose is carried out each is guilty of the offense committed, whether he did any overt act or not. This rests on the principle that one who is present, encouraging, aiding, abetting, or assisting * * the active perpetrator in the commission of the offense is a guilty participant, and, *565 in the eye of the law, is equally guilty with the one who does the act. .
“Aid and abet ‘comprehend all assistance rendered by acts or words of encouragement or supports or presence, actual or constructive, to render assistance should it become necessary. No particular acts are necessary. If encouragement be given to commit the felony, or if, giving due weight to all the testimony, the jury are convinced beyond a reasonable doubt that the defendant was present with a view to render aid should it become necessary, then that ingredient of the offense is made out.’
“If there is no prearrangement or precon-cert, mere presence, with the intent to give aid if necessary, is not aiding or abetting ‘unless the principal knew of the presence, with intent to aid, of such person.’ ” [Citations omitted.]
In the case before us the appellant entered into an agreement with those persons who entered the store and committed the overt acts of robbery to aid and assist them in so doing. He drove them to the scene of the offense, let them off and then placed his car where they could see him blink his car lights as a signal that all was clear for them to enter the store. He waited for them to rob the store and he then drove them home and accepted part of the money taken in the robbery. He was a principal in the second degree as that was known to the common law and the statute quoted makes him equally guilty with the actual perpetrators of the offense. There was substantial evidence of his guilt and of every element of the offense. The motion of the appellant for a directed verdict was properly overruled. Sullivan v. State, 48 Ala.App. 347, 264 So.2d 576. It may also be noted that the said motion for a directed verdict did not include a motion to exclude the evidence. It is for that reason, little more than a request for a general charge in favor of the defendant without presenting such a written charge at that time to the trial judge. A jury question had been made out by the evidence at the time of said motion. It was not a question of law to be decided by the trial judge, but a question of fact to be decided by the jury.
The evidence of the appellant’s guilt in this case is substantial and is without dispute and the trial court correctly refused appellant’s charge one, which was a general affirmative charge in favor of the appellant. Smith v. State, 165 Ala. 50, 51 So. 610.
The appellant contends in this case that the officer taking the confession of the appellant made to the defendant a promise of reward or favor to induce the confession. There is no evidence in this case to that effect. The appellant signed a statement that no promise had been made to him. The record clearly reveals that full and complete “Miranda” warnings were given to the appellant before he was questioned. The evidence further shows that appellant was not threatened or offered any inducements or hope of reward or immunity from prosecution in order to get him to make a statement or confession. The officer taking the confession denied making any statement to the appellant that if appellant did not make a statement, his wife would be involved. The evidence clearly and without contradictions shows that the confession and statement were voluntarily made by the appellant.
We have searched the record for error and have found none. It is therefore ordered and adjudged by this court that the final judgment of the trial court be and is affirmed.
The foregoing opinion was prepared by the Honorable L. S. Moore, a retired Circuit Judge, serving as a Judge of this Court, under the provisions of § 6.10 of the new Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
TYSON, P. J., and HARRIS, DeCARLO and BOWEN, JJ., concur.
BOOKOUT, J., concurs in result.