Nathan Sherman Casey was convicted of robbery in the first degree and sentenced to life imprisonment without parole as a *Page 1163 
habitual offender. He presents four questions on appeal.
 I
Defendant takes issue with the trial court's charge to the jury regarding aiding and abetting, stating in his brief that the "proper definition" of the phrase was set out in Jones v.State, 174 Ala. 53, 57 So. 31 (1911), as follows: The words "aid and abet `comprehend all assistance rendered by acts or words of encouragement or support or presence, actual or constructive, to render assistance should it become necessary.'" 174 Ala. at 57, 57 So. 31. We agree that Jones v.State, states the correct definition of the term "aid and abet," and that definition is exactly what the trial judge read to the jury three times during his oral charge. There was no error in the court's instruction.
 II
Casey maintains that the trial court erred by allowing State's witness, Investigator John Smith, to testify that his visual comparison between a wet tire track at the scene of the robbery and the tire tread on the truck containing the stolen property revealed the "same type [tread] pattern." This court has determined the same issue adversely to defendant's position in the companion case of Tice and Sullivan v. State, [Ms. 3 Div. 874, June 26, 1984] (Ala.Crim.App. 1984).
 III
Casey also challenges the sufficiency of the State's evidence against him. The facts presented at Casey's trial were substantially the same as those established at the consolidated trial of his co-defendants and reported in Tice and Sullivan v.State, supra. Thus, we need not detail the evidence except insofar as it points to Casey's involvement in the robbery.
Although none of the State's witnesses positively identified Casey as one of the intruders at the coin show robbery, Montgomery Civic Center maintenance engineer James Lee testified that Casey looked like one of the two men who jumped him with a gun, taped his eyes and hands, and held a knife to his throat. In addition, Casey was positively identified as one of two men who requested and paid the rental fee on a Hertz truck, the same vehicle whose tire tread, in the opinion of Officer John Smith, matched the wet tracks at the Civic Center, the day of the robbery.
Dothan police Officers Robert Sorrells and Gary Kinney observed the same Hertz rental truck, along with a Jarpool parking lot the day after the robbery. Sergeant Kinney walked into the Omelet Shoppe, saw Casey and his confederates inside, and kept them and the trucks under surveillance. The officers then observed Casey and the co-defendants leave the Omelet Shoppe, congregate behind the Jarpool truck and split up, with Casey entering the Jarpool truck. Suddenly, Casey jumped from the driver's side of the Jarpool truck and ran to the Hertz truck. After a high-speed chase, the officers stopped the Hertz rental truck, detained the occupants, and inventoried both vehicles. Over three million dollars worth of stolen coins were recovered from the Jarpool truck.
While circumstantial, the evidence was clearly sufficient to submit the case to the jury. "Whether circumstantial evidence tending to connect the defendant with the crime excludes, to a moral certainty, every other reasonable hypothesis than that of the defendant's guilt is a question for the jury and not the court." Cumbo v. State, 368 So.2d 871, 875 (Ala.Crim.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979).
 IV
Finally, Casey argues that the trial judge considered improper evidence of his prior convictions for purposes of sentencing under the Habitual Offender Act and meted out to him a sentence disproportionate to his crime, in violation of the principles enunciated in Solem v. Helm, 463 U.S. 277,103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). *Page 1164 
At Casey's sentencing hearing the State introduced evidence purporting to show ten prior convictions by Casey. The offer of two of these, State's exhibits 3 and 4, was later withdrawn. Two other convictions, evidenced by State's exhibits 1 and 2, should not have been considered in sentencing because the records did not affirmatively show that Casey was represented by counsel or had waived counsel at the time of the convictions. See Watson v. State, 392 So.2d 1274, 1279
(Ala.Crim.App. 1980), cert. denied, 392 So.2d 1280 (Ala. 1981). The reception of State's exhibits 1 and 2, however, was harmless error because six other convictions evidenced by State's exhibits 5 through 10 were properly introduced and considered by the trial court. See Watson v. State, supra, at 1279.
Exhibits 5 and 6 were certified copies of the judgment entries of two forgery convictions arising out of two guilty pleas in Pike County on August 23, 1968. The exhibits affirmatively showed that defendant was represented by an attorney at each plea and received a sentence of four years for each conviction.
Exhibits 7 through 10 consisted of certified copies of the judgment entries of four forgery convictions arising out of four separate indictments in Houston County. At all convictions, defendant was represented by an attorney. Exhibit 7 reflected a September 23, 1969, conviction following trial by jury and sentence of five years. Exhibit 8 represented a conviction on November 25, 1969, following a guilty plea, and a sentence of four years. Exhibits 9 and 10 also showed convictions following two guilty pleas to forgery indictments, both on December 1, 1969, with sentences of three and two years, respectively.
Casey argues that these six forgery convictions should not have been considered as six prior convictions for purposes of the habitual offender statute because the adjudications of guilt arose out of one common occurrence, the guilty pleas were entered on the same day to six counts of a single indictment, and he received only one sentence for all six offenses.
The exhibits introduced by the State simply do not support Casey's claim that all six of his prior convictions had a common origin, occurred on the same day, corresponded to multiple counts of a single indictment, or carried a single sentence. The judgment entries for State's exhibits 5 through 10 show adjudications of guilt on August 23, 1968, November 25, 1969, and December 1, 1969. Furthermore, each conviction arose out of a separate indictment with a separate circuit court number and was accompanied by a separate sentence. The judgment entries contained in State's exhibits 5 through 10 clearly represent six convictions for purposes of the Habitual Felony Offenders Act. See Watson v. State, supra.
Moreover, it is settled that, even if Casey's six prior convictions had arisen out of a "common event or occurrence,"Seritt v. State, 401 So.2d 248, 250 (Ala.Crim.App.), cert.denied, 401 So.2d 251 (Ala. 1981), or had been entered on the same day, Chambers v. State, 418 So.2d 948, 950 (Ala.Crim.App. 1982), they would still have constituted six separate convictions. "[W]here two or more convictions occur at the same time and in the same court, they are separate convictions within the meaning of the Habitual Offender Statute." Watson v.State, 392 So.2d at 1279.
The precise question of proportionality raised by the United States Supreme Court in Solem v. Helm, 463 U.S. 277,103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), was "whether the Eighth Amendment proscribes a life sentence without possibility of parole for a seventh nonviolent felony," 103 S.Ct. at 3004. The rule announced in Solem does not apply here because, although Casey's six prior felonies may have been nonviolent, his latest or "triggering" offense (first degree robbery) was one which the legislature has classed as a serious "life-endangering" crime. Compare Seritt v. Alabama, 731 F.2d 728, 735 (11th Cir. 1984) (sentence of life imprisonment without parole for first degree robbery following *Page 1165 
four prior nonviolent felonies is not disproportionate underSolem v. Helm).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.