The appellant, Robert G. Silvey, was indicted for the offense of intentional murder as proscribed by § 13A-6-2 (a)(1), Code of Alabama 1975. He was sentenced as a habitual offender to imprisonment for a term of life.
The State's evidence tended to show that, while at the residence of Gladys Mae Lewis on the afternoon of September 14, 1984, Silvey shot Charles Bradley with a .22 caliber long rifle. Bradley died as a result of the gunshot, which went through his left arm and into the lower left portion of his chest. His blood alcohol level, determined at the autopsy, was .32 percent.
Ms. Lewis testified for the State to the following. At the time of the incident, she and Silvey had been living together approximately seven months. She and Silvey had been drinking all day and "had had a lots to drink." Silvey brought Bradley to Ms. Lewis's residence about 3:00 p.m. after picking him up to go to work. Silvey and Bradley worked together and were good friends. Ms. Lewis and Silvey continued to drink and Bradley joined them. Silvey and Bradley were drinking heavily. While Ms. Lewis was in the kitchen cooking, Bradley left the living room, where he had been visiting with Silvey, and entered the kitchen. There, he told Ms. Lewis, "I'm going to go to bed with you tonight." His statement was loud enough for Silvey to hear it. *Page 791 
Ms. Lewis replied, "You go back in there where [Silvey] is at and sit down, now. I'm trying to cook." Bradley then went back to the living room. After Ms. Lewis finished cooking, she joined the two men in the living room. She did not know how anything got started between the two men, but an argument ensued and Bradley pushed Silvey. Ms. Lewis thought that they were arguing about the statement that Bradley had made to Ms. Lewis in the kitchen. After the argument appeared to be over, Silvey left the house for about five minutes. When he returned, he was carrying a rifle. Bradley was standing by the coffee table and Silvey was standing at the head of the stairs, by the couch; they were about three feet apart and facing each other. Neither appeared to be angry. Silvey did not say anything to Bradley; he simply reached out to hand Bradley the rifle. Before Bradley grabbed the rifle, the rifle went off; Bradley fell; Silvey dropped the rifle; and he said, "God in heaven, what have I done?" Silvey also asked Ms. Lewis to call an ambulance. Then, Silvey picked up the rifle and disappeared.
Joseph Silvey, Silvey's father, testified that, on the afternoon of September 14, Silvey came into his apartment, which is located across the street from Ms. Lewis's apartment. His son did not appear to be angry. Mr. Silvey heard him say something but he did not understand. He saw him leave with a rifle and go across the street. After Mr. Silvey hollered at his son, Silvey said "something another about showing the gun." Silvey had shown the gun to other people, so his taking the rifle did not bother Mr. Silvey. Later, Silvey returned to the house and put the rifle back where it belonged. Then, Ms. Lewis came over and said something about calling a paramedic. Silvey said, "Well, [Bradley] has been shot, but he's shot low in the arm." Then, Ms. Lewis and Silvey left. Finally, Mr. Silvey testified that when his son drank a few beers, he would want to show the rifle to others.
Officer Mike Moon testified that Silvey was picked up around 5:00 p.m. and read his Miranda warnings.[1] The officer also conveyed his opinion that Silvey appeared intoxicated at this time.
Sergeant Lemley testified that an inspection of Ms. Lewis's residence revealed a .22 shell casing at the top of the stairs. The body was found in front of the television. The distance from the top of the stairway to the body was ten to fifteen feet. The officer also observed a bottle of Old Thompson liquor.
Detective Bearden testified as follows: When he talked to Silvey at approximately 9:00 p.m., Silvey did not appear to be intoxicated. Silvey was read his Miranda warnings and he signed a waiver of those warnings. Silvey told the detective that he threw the gun on the couch and it went off and that he did not think Bradley was hurt too bad, so he left because he knew he would go to jail. A few minutes later, Silvey explained that he realized Bradley was too drunk to be handling a gun so he grabbed it away from him and the gun went off. Silvey also stated that he walked to the top of the stairs and shot Bradley.
Sergeant Lemley, on recall, testified that he was present when Silvey talked with Detective Bearden. In regard to Silvey's appearance, Lemley stated, "He appeared very nervous, like he was someone that was wanting another drink to me, but I don't think he was drunk."
After all testimony was taken and defense counsel had submitted requested written charges, the following occurred:
 "MR. McCORD: Judge, we would also request that the Court give the lesser included offense of manslaughter and criminally negligent homicide.
 "THE COURT: Your defense has been that it was accidental. It's either murder or not. So, I am going to deny that. *Page 792 
"MR. McCORD: Our defense has also been —
 "THE COURT: Defense has been that it was an accident throughout the trial, so if it was an accident he's not guilty of murder. If it was, there's no lesser included offense."
Accordingly, the court's oral charge included no instruction on any lesser offense. Thereafter, defense counsel objected:
 "Also except to the Court's refusal of giving lesser included offenses of Manslaughter and Criminally Negligent Homicide. We believe in this case the evidence is such that it would support a conviction on either one. I think they should have been given to the jury."
Under the holding of Matkins v. State, [Ms. 8 Div. 1, November 12, 1985] (Ala.Cr.App. 1985), defense counsel's actions properly preserved for our review the trial court's failure to charge the jury on any lesser included offense. See also Connolly v. State, [Ms. 1 Div. 965, December 10, 1985] (Ala.Cr.App. 1985).
In determining the merits of Silvey's claim, we are guided by the following passage from Chavers v. State, 361 So.2d 1106,1107-08 (Ala. 1978):
 "An individual accused of the greater offense has a right to have the court charge on the lesser offenses included in the indictment, when there is a reasonable theory from the evidence supporting his position. Fulghum v. State, 291 Ala. 71, 277 So.2d 886 (1973). A court may properly refuse to charge on lesser included offenses only (1) when it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) when the requested charge would have a tendency to mislead or confuse the jury. Lami v. State, 43 Ala. App. 108, 180 So.2d 279 (1965). In fact, our decisions are to the effect that every accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility. Burns v. State, 229 Ala. 68, 155 So. 561
(1934)."
See also § 13A-1-9 (b), Code of Alabama 1975. It matters not that the evidence supporting the defendant's position is offered by the State. Connolly v. State, supra (quoting Pruitt v. State,457 So.2d 456, 457 (Ala. 1984)).
With these principles before us and based upon the evidence presented to the jury, we find that, at the very least, the jury should have been charged on the lesser offense of manslaughter, for the evidence of Silvey's intoxication presented a jury question as to whether Silvey was capable of forming the specific intent necessary for conviction under § 13A-6-2 (a)(1).
 "When the offense consists of an act committed with a particular intent, — when a specific intent is of the essence of the crime, — drunkenness, as affecting the mental state and condition of the accused, becomes a proper subject to be considered by the jury in deciding the question of intent. . . . In Swan v. State, 4 Humph. 136, it is said: `Although drunkenness, in point of law, constitutes no excuse or justification for crime, still, when the nature and essence of a crime is made by law to depend upon the peculiar state and condition of the criminal's mind at the time, and with reference to the act done, drunkenness, as a matter of fact, affecting such state and condition of the mind, is a proper subject for consideration and inquiry by the jury. The question in such cases is, what is the mental status?' The decided weight of authority sustains the doctrine that evidence of the condition of the accused, though caused by voluntary drunkenness, is receivable, and may be considered by the jury in determining the question of intent. [Citations omitted.]
 . . . There being some testimony tending to show that defendant was drunk, he had a right to have the jury pass upon its credibility and sufficiency to prove that *Page 793 
he was so drunk as to be incapable of forming the specific intent. . . ."
Chatham v. State, 92 Ala. 47, 48-49, 9 So. 607, 607-08 (1891).
In reversing this cause for the court's failure to instruct the jury on the offense of manslaughter, we adopt the following conclusion expressed in Crosslin v. State, 446 So.2d 675, 682
(Ala.Cr.App. 1983):
 "No matter how strongly the facts may suggest that appellant was not so intoxicated at the time he committed the offense that he was incapable of forming the necessary specific intent, the jury should have been instructed on manslaughter as a lesser included offense since there was a `reasonable theory from the evidence which would support the position.'"
Having determined that this cause must be reversed, we need not discuss the trial court's failure to also instruct the jury on the offense of criminally negligent homicide. However, we note the wisdom expounded in Phelps v. State, 435 So.2d 158, 163
(Ala.Cr.App. 1983):
 "The `safer' practice is to charge upon all degrees of homicide: `(I)t is much the safer rule to charge upon all the degrees of homicide included in the indictment, when a party is on trial for murder, unless it is perfectly clear to the judicial mind that there is no evidence tending to bring the offense within some particular degree.' Pierson v. State, 99 Ala. 148, 153, 13 So. 550 (1892), approved in Williams v. State, 251 Ala. 397, 399, 39 So.2d 37
(1948)."
We also note that, in the event Silvey is retried and again convicted, it appears that Silvey has three prior felony convictions. State's exhibit 1 is a copy of the Georgia indictment charging Silvey with two counts of aggravated assault, a copy of an entry showing Silvey's plea of guilty, and a copy of the order sentencing Silvey to imprisonment for a term of five years "as to each count to run concurrently." This exhibit reflects two prior felony convictions rather than one, as concluded by the trial court. Even though prior convictions were based on a common event or occurrence or were entered on the same day, they still constitute separate convictions. Casey v. State,456 So.2d 1161 (Ala.Cr.App. 1984), and cases cited therein. Thus, with evidence of these two prior convictions and a third conviction reflected by State's exhibit 2, Silvey is a habitual offender with three prior felony convictions.
With these observations, we reverse and remand this cause for further proceedings.
REVERSED AND REMANDED.
All Judges concur.
[1] The warnings read to Silvey, as reflected by the officer's testimony, were incomplete. Silvey was not warned, as required byMiranda v. Arizona, 384 U.S. 436, 469, 86 S.Ct. 1602, 1625,16 L.Ed.2d 694 (1966), that anything he said could and would be used against him in court.