David Wallace and Wayne Walker were found guilty of attempted murder, in violation of § 13A-4-2, Code of Alabama (1975). The appellants were each sentenced to life in the penitentiary without parole.
Howard Garrett testified that he owned a business called Howard's Gas and Snack. He testified that as he began to close his business on the night in question, he was reading the gas pumps when a black male entered his store looking for "sweets or snacks." Mr. Garrett stated that he walked back inside the store, whereupon the black male approached the counter and laid a package of potato chips and a package of cookies on the counter. Garrett testified that he (Garrett) was carrying a gun which was concealed under his vest. The black male indicated that he wanted something else. He walked back to the potato chip rack and looked toward the door. Garrett testified that he, therefore, also looked toward the door and observed another black male entering with a pistol in his hand. Garrett stated that after he turned around and looked back toward the man with the potato chips, he heard a shot. He testified that he then "looked over directly at him [the male with the gun] and the gun went off again." Garrett testified that he lay down on the floor and "played dead." He stated that during this time, he never pulled his gun until after the two black males had left, and when he thought it was safe to do so he got up and telephoned the police. In court, Garrett identified appellant Walker as the man who shot him and appellant Wallace as the man who *Page 851 
walked in the store first. Garrett further testified that after he had called the police he had the inclination that the two men would be back to get him. Immediately thereafter, a foreign car drove up and Garrett fired his gun through the window. At the close of the direct examination of Howard Garrett, the following transpired:
 "[Prosecutor]: Did the defendant Wallace that came in there and placed the items on the counter did he ever pay you for those items?
"A. He may have put some cash on the counter.
"Q. All right. Did you see him do that?
"A. Yes, he put some cash up on the counter.
"Q. All right. Was that cash still there?
 "Q. Do you know how much that would have been? You said he had a bag of chips and some other item?
"A. Somewhere around a dollar."
Alex Powell testified that on the night in question he was working as a security guard at Van's Photos. Powell testified that at the time in question, he was sitting in the guard house reading a newspaper when he became aware that someone was looking at him through the window. Powell looked up and saw a man who turned, walked away and went around the corner. Powell followed the man and as Powell approached the middle of the parking lot he observed police cars at Howard's Gas and Snack. Powell stated that he asked the man what had happened and he said, "Somebody got shot." The man kept walking and Powell followed him whereupon the man stopped, turned around, and asked Powell to hide him. The man asked to be taken to Springhill Avenue; however, Powell responded that he did not have a car. Powell observed a police car driving down the street and the man quickly hid behind two cars. Powell then told the man to get in the guard shack. He instructed the man to "get down low and turn the lights off." Powell locked the man inside the guard shack; he then notified the police of the man's presence and the police thereafter took the man into custody.
James Mayo, Sr., a police sergeant with the Mobile Police Department, testified that he first talked to the appellant Wallace at the scene of the offense and that he was advised of his rights by Sergeant Powell. Sergeant Mayo also testified that once they got downtown, he again advised the appellant of his Miranda rights and attempted to question him. However, the appellant refused to sign a waiver form and would not make a statement. Two days later, Sergeant Mayo testified, the appellant was again advised of his rights; this time he signed a waiver form and made a statement. The trial court suppressed this statement, following a hearing. Sergeant Mayo also testified that he was present at the scene of the offense on the night in question. He testified that Officer Winn had been the initial officer on the scene and had locked the store after he left. When Sergeant Mayo arrived, "the station was as he [apparently Officer Winn] had left it," without any money lying on the counter.
Dr. Thomas Irving testified that Howard Garrett, the victim, suffered two life threatening wounds.
A latent print was taken from a .357 Magnum revolver which was recovered in a neighborhood near the scene of the offense on the day following the offense. This print was positively identified as the print from appellant Wallace's left index finger.
 I.
The appellants argue that the trial court erred in denying the defense motion for mistrial after the selection of the jury on the grounds that the prosecutor exercised his peremptory challenges in a racially discriminatory manner. The record indicates that there were nine black members of the venire and that the defense struck seven of them. In response to the defense counsel's motion, the prosecutor gave the following explanations for his strikes: a young black female was struck because she was a homemaker and "may have trouble making the necessary judgments that have to be made and that is the knowledge of what life is like out on the street"; a young black female who is a student made no *Page 852 
indication that she was working and "would have not have the necessary experience to be able to draw on to make a judgment in this case"; an older black female who was retired and "maybe overly sympathetic based on the fact that she appeared to be a grandmotherly type;" a young black male who had a beard and "I [the prosecutor] tend to think that people that have beards are somehow those that try to go against the grain," and also, "both of the defense attorneys have beards and I felt like that he would somehow identify with the defense attorneys and would therefore lean in their direction"; a middle-aged, black male who was not working and "may be somewhat irresponsible"; and a middle-aged black female who was some type of supervisor and appeared to be in the same age group as the defendants' parents or mothers.
After the defense counsel made a prima facie showing of discrimination under Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the burden shifted to the State to produce neutral explanations for challenging the black jurors. As indicated above, the prosecution gave race-neutral explanations for his strikes.
 "`The reasons given in response to the court's inquiry need not be equivalent to those for a challenge for cause. If the party shows that the challenges were based on the particular case on trial, the parties or witnesses, or characteristics of the challenged persons other than race, then the inquiry should end and the jury selection should continue.'"
Ex parte Jackson, 516 So.2d 768 (Ala. 1986), quoting State v.Neil, 457 So.2d 481, 487 (Fla. 1984).
 II. ISSUE RAISED BY APPELLANT WALKER
Appellant Walker contends that "the joinder of the two defendants resulted in an unfair trial." The record indicates that the trial court conducted a pretrial hearing in which the judge decided to consolidate the two appellants' cases. Thereafter, the following transpired:
 "[COUNSEL FOR APPELLANT WALLACE]: . . . In addition, not from my client's point of view but I guess Mr. Bertolotti's [counsel for appellant Walker] point of view, that if they didn't have joint trials, my client would testify on Mr. Bertolotti's client's behalf and say that he was not — According to the statements I think that John [Mr. Bertolotti] had is that he would testify that Mr. Bertolotti's client was not there and had nothing to do with it.
 "THE COURT: Well, he can do that at the trial anyway can't he?
 "[Counsel for appellant-Wallace]: I don't think he is going to take the stand, Judge.
"THE COURT: I see. Okay.
 "[COUNSEL FOR APPELLANT WALLACE]: But he could be called as a witness in Mr. Bertolloti's case is what I am saying. That's not my objection; that's John's.
 "MR. BERTOLOTTI: Well, if, in fact, [he] would so testify, I believe there is a possibility that if he were not tried with my client that he might testify that the other individual there was named Robert Hines and not Wayne Walker. But, if, in fact, [counsel for appellant Wallace] is correct that that is what he would testify to, then I would add that to the grounds that I have stated.
 "THE COURT: I don't think there's been a sufficient showing of prejudice to either side. So, we are going to go ahead and consolidate them."
The record also indicates that appellant Wallace made an affidavit stating that had he and appellant Walker been tried separately he would have testified on Walker's behalf that he was present at the scene of the offense, saw Howard Garrett shot, and that Walker was not at the scene of the crime and did not shoot Garrett. However, this affidavit was not presented to the trial court until after the close of both parties' cases, just prior to the closing arguments. Appellant Wallace did not testify in front of the jury, while appellant Walker testified and presented a defense of alibi and identity. *Page 853 
Rule 15.4 (b), Alabama Temporary Rules of Criminal Procedure, states:
 "If defendants are charged in separate indictments, informations, or complaints, the court, on its own initiative or on motion of any party, may, no later than seven (7) days prior to trial, order that the defendants be joined for the purposes of trial if the defendants could have been joined in a single indictment, information, or complaint. Proceedings thereafter shall be the same as if the prosecution initially had been under a single indictment, information, or complaint. However, the court shall not order that the defendants be tried together without first providing the defendants and the prosecutor an opportunity to be heard."
It is clear that the requirements for consolidation, under Rule 15.4 (b) were met. Rule 15.4 (d) provides that a court shall order a severance of defendants where "a defendant or the state may be prejudiced to the extent that a fair trial cannot be afforded."
 "While we acknowledge that defendants who are jointly tried will encounter tactical problems, we do not hold that these problems necessarily deny the defendants a fair trial. The provisions of Rule 15.4 concerning joinder and consolidation are designed to promote judicial economy and efficiency. At the same time, the provisions of Rule 15.4 pertaining to severance are designed to ensure that defendants are not prejudiced by the joinder to the extent that they are denied a fair trial. This rule was promulgated with the knowledge of the tactical problems likely to be faced by defendants who are tried together."
White v. State, 479 So.2d 1368, 1372-73 (Ala.Cr.App. 1985).[1]
The guidelines for the standard of review to be applied to such assertions of prejudice are stringent:
 "If a defendant claims that he was prejudiced by the loss of codefendant testimony which might have been forthcoming at a separate trial, he must demonstrate:
 1) a bona fide need for the testimony 2) the substance of the testimony 3) its exculpatory nature and effect and 4) that a co-defendant would, in fact, testify if the cases were severed. If such a showing is made, the trial court must: 1) examine the significance of the testimony in relation to the defendant's theory of defense 2) assess the extent of prejudice caused by the absence of the testimony 3) pay close attention to judicial administration and economy 4) give weight to the timeliness of the motion. United States v. Rice, 550 F.2d 1364 (5th Cir.), cert. denied, 434 U.S. 954, 98 S.Ct. 478, 54 L.Ed.2d 312 (1977)."
United States v. Pruitt, 763 F.2d 1256, 1263 (11th Cir. 1985),cert. denied, 474 U.S. 1084, 106 S.Ct. 856, 88 L.Ed.2d 896
(1986). See also United States v. Johnson, 713 F.2d 633 (11th Cir. 1983), cert. denied, 465 U.S. 1081, 104 S.Ct. 1447,79 L.Ed.2d 766 (1984) (applying this test, the Johnson court determined that the appellant's motions were deficient and little more than bare conclusory allegations providing little clear indication of specific and exonerative facts about which the appellant's co-defendant would testify; the court further determined that the motions lacked credibility because the alleged testimony did not contravene the codefendant's penal interest).
In the case sub judice, the appellant failed to show a bona fide need for the testimony. Further, the motion for severance failed to demonstrate that the codefendant would in fact testify on the appellant's behalf if the appellants were tried separately. Thus, the appellant failed to meet his burden. The trial court did not abuse its discretion in the decision to deny the motion. The affidavit was brought to the court's attention in an untimely manner and the extent of prejudice caused by the absence of the testimony was not such as to deny the appellant a fair trial. *Page 854 
 "Once joinder has been ordered, severance is within the trial judge's discretion. United States v. Cannington, 729 F.2d 702 (11th Cir. 1984). In making his decision as to whether a motion for severance should be granted, the trial judge should weigh the possibility of prejudice to the defendants against the public interest in judicial economy and efficiency. Holsemback [v. State, 443 So.2d 1371
(Ala.Cr.App. 1983)]; United States v. Walker, 720 F.2d 1527 (11th Cir. 1983), cert. denied, Gustin v. United States, 465 U.S. 1108, 104 S.Ct. 1614, 80 L.Ed.2d 143 (1984)."
White v. State, supra, at 1373.
 "The grant or denial of a motion for severance lies within the discretion of the trial court and is reviewable only for abuse of discretion. United States v. Kabbaby, 672 F.2d 857 (11th Cir. 1982). To demonstrate that a trial court abused its discretion in denying a motion for severance, a defendant must demonstrate that he suffered compelling prejudice against which the trial court was unable to afford protection. United States v. Russell, 703 F.2d 1243
(11th Cir. 1983)."
United States v. Pruitt, supra, at 1263.
Thus, appellant Walker failed to demonstrate sufficient prejudice to compel severance by showing that in a separate trial his co-defendant would have provided exculpatory testimony favorable to him. Cf. White v. State, supra, at 1373 (wherein the court held that rule 15.4 does not infringe a defendant's right to remain silent in the situation where his co-defendant takes the stand).
 III. ISSUES RAISED BY APPELLANT WALLACE
Appellant Wallace argues that the trial court erred in denying his motion for acquittal based on an alleged fatal variance between the indictment and the proof on the robbery in the first degree charge. The indictment in question charged that appellant Wallace:
 "did in the course of committing a theft of food products, the approximate aggregate value of said property being unknown to the Grand Jury, the property of Howard Garrett doing business as Howard's Gas and Snack, use or threaten the imminent use of force against the person of Howard Garrett, with intent to overcome his physical resistence or physical power of resistence, while the said DAVID WALLACE or another participant in this theft was armed with a deadly weapon or dangerous instrument, to wit: a gun, in violation of § 13A-8-41 of the Code of Alabama." (Emphasis added.)
The appellant alleges that the "evidence presented by the State at best supports the attempted theft of money and not the theft of food products." The record indicates that although the cash register was apparently tampered with after Howard Garrett was shot, no money was taken from the store. Although Howard Garrett testified that he observed Wallace put some money on the counter after he placed the food on the counter, he also testified that he could not recall whether or not the money was still on the counter after the two men left the store. The State presented the testimony of Sergeant James Mayo, Sr., who observed the scene of the offense after the store had been secured by the initial officer. Sergeant Mayo testified that there was no money on the counter. Furthermore, Ronald Gill, a police officer for the City of Mobile, testified that on the night in question he was called to the scene of the offense to patrol the area, looking for suspects and any evidence that he might find. He testified that he found a package of chips and a package of cookies in a parking lot in the vicinity of the store.
We find no variance between the indictment and the evidence, although the indictment might have also alleged, under the evidence in this case, that the appellant used the force in the course of committing a theft of money.[2] The appellant's *Page 855 
contention actually goes to the sufficiency of the evidence. SeeJeffers v. State, 455 So.2d 201, 203 (Ala.Cr.App. 1984).
"Circumstantial evidence may afford satisfactory proof of the corpus delicti in a . . . robbery prosecution, and, if facts are presented from which the jury may reasonably infer that the crime has been committed, the question must be submitted to the jury." McCloud v. State, 401 So.2d 314, 319 (Ala.Cr.App. 1981), citing Dolvin v. State, 391 So.2d 133 (Ala. 1980); Griffin v.State, 393 So.2d 523 (Ala.Cr.App. 1981); Hopson v. State,352 So.2d 500 (Ala.Cr.App. 1976).
 "In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude."
Cumbo v. State, 368 So.2d 871, 874 (Ala.Cr.App. 1978), cert.denied, 368 So.2d 877 (Ala. 1979).
 B.
Appellant Wallace contends that the State failed to prove a prima facie case of attempted murder and, thus, that the evidence was insufficient to support his conviction of this offense. Specifically, he charges that the State failed to prove that he had the specific intent to commit the crime of murder and that he performed any "overt act" toward the commission of the attempt as required. The record indicates that the trial judge charged the jury as to the law on aiding and abetting as follows:
 "A person is legally accountable for the behavior of another constituting a criminal offense if with intent to promote or assist the commission of the offense he aids or abets such other person in committing the offense. Whether by pre-arrangement or on the spur of the moment two or more persons enter into a common enterprise or venture and a criminal offense is contemplated, then each of those persons is a conspirator and if the purpose is carried out, then each is guilty of the offense committed whether they did any overt act or not. This rests upon the principle that one who is present and is knowingly and intentionally incurring, aiding, abetting or assisting the actual perpetrator in the commission of an offense is a guilty participant and in the eyes of the law is equally guilty with the one who does the act."
According to § 13A-2-23, Code of Alabama (1975):
 "A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense:
". . . .
 "(2) He aids or abets such other person in committing the offense. . . ."
The commentary to § 13A-2-23 states:
 "Regarding the extent of liability as a consequence of the principal's actions, Alabama case law has held that as a general rule each person entering upon an unlawful purpose is responsible for everything which may consequently and proximately flow from the unlawful purpose (whether committed by defendant or not, and whether specifically intended or not). . . ."
For purposes of indictments and trials, there is no distinction between principals and accessories under Alabama law. Lewis v. State, 469 So.2d 1291, 1297 (Ala.Cr.App. 1984),affirmed, 469 So.2d 1301 (Ala. 1985).
 "`Aid and abet "comprehend all assistance rendered by acts or words of encouragement or support or presence, actual or constructive, to render assistance should it become necessary."' Jones v. State, 174 Ala. 53, 57, 57 So. 31 (1911), quoted in Radke v. State, 292 Ala. 290, 292, 293 So.2d 314
(1974). If the jury is convinced beyond a reasonable *Page 856 
doubt that the defendant was present with a view to render aid should it become necessary, the fact that the defendant is an aider and abetter is established. Jones, supra; Raiford v. State, 59 Ala. 106, 108, (1877). `The culpable participation of the accomplice need not be proved by positive testimony, and indeed rarely is so proved. Fuller v. State, 43 Ala. App. 632, 198 So.2d 625. Rather, the jury must examine the conduct of the parties and the testimony as to the surrounding circumstances to determine its existence.' Miller v. State, 405 So.2d 41, 46
(Ala.Cr.App. 1981); Watkins v. State, 357 So.2d 156, 159 (Ala.Cr.App. 1977), cert. denied, 357 So.2d 161
(Ala. 1978)."
Gwin v. State, 456 So.2d 845, 851 (Ala.Cr.App. 1984).
Thus, appellant Wallace is responsible for the criminal acts of appellant Walker, and the intent to cause the death of Howard Garrett may be inferred from the attending circumstances, Paige v. State, 494 So.2d 795, 796 (Ala.Cr.App. 1986); Fears v. State, 451 So.2d 385 (Ala.Cr.App. 1984), and "`from the use of a deadly weapon and the character of the assault. Chaney [v. State, 417 So.2d 625 (Ala.Cr.App. 1982)].'"Free v. State, 495 So.2d 1147, 1158 (Ala.Cr.App. 1986), quotingFree v. State, 455 So.2d 137, 148 (Ala.Cr.App. 1984).
AFFIRMED.
All the Judges concur.
[1] But see United States v. Siegel, 717 F.2d 9, 22 (2d Cir. 1983), wherein the Court outlined the following criteria to be used: (1) sufficiency of showing that co-defendant would testify at severed trial and waive Fifth Amendment privilege, (2) degree to which exculpatory testimony would be cumulative, (3) counter arguments of judicial economy, and (4) likelihood that testimony would be subject to substantial, damaging impeachment.
[2] Our robbery statutes now define robbery as including what formerly would have been an attempt to commit robbery, and they require no actual theft or asportation of property. Petty v.State, 414 So.2d 182, 183 (Ala.Cr.App. 1982). Ex parte Curry,471 So.2d 476, 487 (Ala. 1984).